## STATE OF MINNESOTA *vs.* EDWARD LAWLOR.

### August 1, 1881.

**Criminal Trial—Challenge—Harmless Error.**—If, in empanelling a jury, a challenge by the defendant to a juror for disqualification is erroneously disallowed, and the defendant afterwards challenges the juror peremptorily, and a jury is obtained without the defendant having exhausted his peremptory challenges, the error in disallowing the challenge is without prejudice.

**Same—Evidence—Plans and Diagrams.**—Plans and diagrams of premises which are the scene of transactions under investigation, made for the purpose of the trial, may be referred to by the witnesses to explain and render more easily intelligible their testimony, and are proper for the consideration of the jury, so far as they are shown to be correct, not as independent testimony, but in connection with other evidence, to enable the jury to understand and apply such evidence.

**Same—Evidence showing Motive to commit a Crime.**—On the trial of the defendant on an indictment for the murder of James Malone, the *corpus delicti* having been proved, and testimony introduced tending to connect the defendant with the commission of the crime, and it appearing that shortly before the homicide Malone had committed an assault on a woman who was in the defendant's company, *held*, that evidence that the defendant and this woman sustained the relation to each other of paramours was properly admitted, as tending in some degree to show a motive for the defendant to commit the crime.

**Same—False Testimony, under Duress, at a Former Trial.**—A witness for the state having stated that her testimony on the trial of another party for the same murder (which was different from that given on this trial) was knowingly false, and was given under the threat and fear of personal violence from the defendant and another if she testified otherwise, *held*, that an offer by the defendant to prove by a justice of the peace that, shortly before the former trial, he and the county attorney assured the witness officially that she would be protected in telling the truth, was properly overruled, as having no legitimate tendency to disprove duress arising from threats of actual violence, and not from the fear of legal proceedings.

**Same—Contradiction of Impeaching Witness.**—A witness called to contradict another witness, by showing contradictory statements made out of court, may be himself contradicted in like manner.

**Same—Accomplice—Sufficiency of Corroboration.**—Whether a witness is an accomplice in the commission of the crime for which the defendant is on trial, is a question for the jury and not for the court. In order to a conviction upon the testimony of an accomplice, the corroborating evidence is sufficient, if, independently of the testimony of the accomplice, it tends in some degree to establish the guilt of the accused, and it need not be sufficiently weighty or full as, standing alone, to make out a *prima facie* case.

The defendant was indicted in the district court for Winona county for the murder of James Malone, was tried before *Buckham,* J., (acting for the judge of the 3rd district,) and convicted of manslaughter in the second degree, the jury, in their verdict, recommending him to the mercy of the court. By the judgment of the court he was sentenced to imprisonment at hard labor in the state prison for the term of five years, from which judgment he appeals.

*Wm. Gale* and *C. D. O'Brien,* for appellant.

*Wm. J. Hahn,* Attorney General, and *M. B. Webber,* for the State.

CLARK, J.* 1. In empanelling the jury for the trial of the defendant on an indictment for the murder of James Malone, Lewis Gensmer, upon being called as a juror, was challenged by the defendant for general disqualification. He testified that he was born an alien, and, on cross-examination by the county attorney, was allowed to state, under the objection of defendant's counsel, that he had been naturalized in Dodge county, Wisconsin,—the record of such naturalization not being produced. The court disallowed the challenge, and the defendant excepted. The defendant thereupon challenged him peremptorily. A jury was obtained without the defendant having exhausted the peremptory challenges allowed him by law. The disallowing the challenge is assigned for error here. The error, if such there was, did not, under these circumstances, prejudice the defendant; the disqualified juror did not sit. The prisoner was not prejudiced by using one of his peremptory challenges upon him, for he had others left which he did not use. A very different question would be presented if the defendant had exhausted his peremptory

*Mitchell, J., having tried the indictment against Richman in the district court, took no part in this case.

challenges, for the challenge so used might in that case have been required for another juror who was legally qualified to serve. As it was, the defendant was tried by a jury qualified in law, and it was of no consequence to him whether Mr. Gensmer was excused by order of the court as disqualified, or by his peremptory challenge. *Mimms* v. *State,* 16 Ohio St. 221; *Erwin* v. *State,* 29 Ohio St. 186; *State* v. *Brown,* 15 Kan. 400; *State* v. *Davis,* 41 Iowa, 311; *State* v. *Elliott,* 45 Iowa, 486. In the case last cited it was held that if a juror challenged by the defendant for cause was improperly admitted to the panel, and the defendant accepted the jury, without exhausting his peremptory challenges, it was the voluntary act of the defendant to permit the juror to serve, and error without prejudice. It is not necessary to go so far in this case.

2. Objection is made to the alleged admission in evidence of plans or diagrams of the saloon in or near which Malone was shot, and of the house of ill-fame kept by Lou Reynolds, which the defendant visited in the afternoon of the day of the homicide, in company with Charles Richman, and where, as the testimony for the state tends to show, each of them obtained a pistol. An architect testified that he made the plans or diagrams from actual measurements by himself after the homicide, and that they correctly represented the premises, except that the position of certain tables, chairs, and movable objects in the saloon on the night of the homicide was indicated therein upon information given him by the keeper of the saloon. The plans or diagrams were not formally offered in evidence, but the witnesses, in testifying to the situation, shape, connections and appointments of the rooms, and the position of persons and movable objects in the saloon, at the time of the homicide, were allowed, against the objection of the defendant, to refer to them to explain and render more easily intelligible their testimony. The witnesses testified from their personal knowledge and observation of the facts, and used the maps only for the purpose above mentioned, indicating in what respect they deemed them inaccurate, if any. There was no error in this. Maps and diagrams are often made for use at the trial, and are quite useful to enable the jury to comprehend clearly the testimony. They are often formally admitted in evidence, and are proper for the con-

sideration of the jury, so far as they are shown to be correct, not as independent testimony, but in connection with other evidence, to enable the jury to understand and apply such evidence. *Curtiss* v. *Ayrault*, 3 Hun. 487; *Johnston* v. *Jones*, 1 Black, 209.

3. When, in a criminal case, the *corpus delicti* has been established, and evidence has been introduced tending to connect the prisoner with the commission of the crime, it is always competent for the state to introduce evidence properly tending to show a motive on the part of the defendant to commit the crime. The weight to be given to such evidence is for the jury to determine. Its admissibility depends upon whether it tends to establish a motive which might naturally have influenced or controlled the action of the accused. In *Overstreet* v. *State*, 46 Ala. 30, the court lay down the rule in the following language: "When it is shown that a crime has been committed, and the circumstances point to the accused as the guilty agent, proof of a motive to commit the offence, though weak and inconclusive evidence, is nevertheless admissible." See, also, *Murphy* v. *People*, 63 N. Y. 590; *State* v. *Hinkle*, 6 Iowa, 380; *McCue* v. *Commonwealth*, 78 Pa. St. 185; *State* v.*Wilkins*, 9 Conn. 52; *People* v.*Stout*, 4 Park. Crim. Rep. 71.

Indeed, the rule is so reasonable and so well established in criminal jurisprudence as to admit of no doubt of its correctness. It remains to consider whether it was correctly applied in this case. The testimony on the part of the state tended to show that the prisoner and Charles Richman left the house of Lou Reynolds, in the evening of the day of the homicide, in company with her and Alice Richards, also a prostitute and inmate of the house, in a carriage; that they visited and drank at sundry saloons, and at about 10 o'clock stopped at and entered the saloon of one Parrhysius; that Malone was in the saloon, and others; that several altercations occurred among the parties present; that the first act of actual violence was the throwing of beer by Malone upon Lou Reynolds, who retaliated in like manner; that afterwards Richman struck Malone in the face, and that the latter retaliated by throwing a beer-glass at him, hitting him in the face, and immediately started to run out of the saloon. Richman testified that the blow staggered him, and, while he was

recovering from it, the prisoner pursued Malone and fired at him the two pistol shots, from the effects of which he died. The prisoner, on the other hand, testified that Richman pursued him (Malone) and fired the shots; and the main contention in the case was as to which of these men fired the fatal shots. The state, under the objection and exception of the defendant, introduced evidence to the effect that Lou Reynolds and the prisoner, at the time of the shooting, were paramours, and had sustained that illicit relationship for a year previous.

The evidence was properly admitted, if, as is claimed by the attorney general, it properly tended to show a motive which might have induced the prisoner to commit the crime. If the prisoner and the woman had sustained a near relationship to each other by blood or marriage, it would readily be admitted that the indignity put upon her by the throwing of the beer upon her would naturally have aroused his resentment; and the observation of mankind will, we think, justify the conclusion that, in the relation which the prisoner sustained to Lou Reynolds, the insulting and contemptuous act of Malone in throwing the beer upon her would be likely to arouse in the prisoner passions quite as vindictive, if less excusable, and quite as likely to lead to acts of violence. We think the evidence was competent to go to the jury. And it may be observed, in this connection, that the remarks of the learned judge of the trial court upon the debased and degraded character of the prisoner, as shown by the evidence, to which the prisoner's counsel excepted, were coupled with an admonition to the jury that the defendant's general character was not on trial, but that it was the duty of the jury to pass upon the one issue of his guilt or innocence of the offence with which he was charged, and that, if he was not proved guilty of that, he should be acquitted, notwithstanding the opinion which might be entertained as to his general character. The prisoner was not prejudiced by calling attention to his debased character, which was made to appear from evidence properly received upon a material issue, and cautioning the jury against an improper use of such evidence.

4. Before the indictment against Lawlor was found, Charles Richman had been indicted for the same murder, and tried and convicted

of manslaughter in the second degree, and sentenced to the state prison, and had been afterwards pardoned by the governor, upon the ground of his innocence of the crime, ascertained subsequent to his conviction. Ella Graves, a witness for the state, an inmate of the house kept by the woman Reynolds, testified, by her own confession, upon the trial of Richman, to an entirely different state of facts from what she testified to on the trial of the prisoner; and she stated that her testimony on the former trial, which bore strongly against Richman and in exculpation of the prisoner, was knowingly false, and was given under duress. She stated in substance that Lawlor and Lou Reynolds had threatened her with personal violence if she made certain statements out of court or in, and that she then believed her life was in danger if she spoke or testified to the truth. The defendant's counsel offered to prove by Mr. McKay, an examining magistrate, that, a few days before the trial of Richman, he and Mr. Bentley, the county attorney, acting in their official capacity, went to the house of the woman Reynolds, and saw there the witness Graves and the other witnesses; and that Mr. Bentley, in the presence of the witness, stated to them all, and particularly to the woman Graves, that all they wanted to know was the facts; that they wanted the exact truth, and that in telling the truth they would all be protected; which offer was overruled, on the objection of the county attorney, and the defendant by his counsel excepted.

It is claimed by the defendant's counsel that the testimony offered was admissible as tending to show that the witness Graves did not testify under duress on the trial of Richman, and to contradict her statements in that regard. If the testimony offered had any legitimate tendency to show that the claim of being under duress at the former trial was untrue, it was certainly competent as affecting the credibility of the witness and the weight to be given to her testimony. But we are of opinion that it had no such legitimate tendency. It was personal violence that the witness Graves feared, according to her testimony. There was no pretence by her, or by any one else, that by telling the truth she would subject herself to a criminal prosecution. The magistrate and county attorney might have given her assurances of protection against any legal proceedings against her, which might

be supposed to have relieved her mind, if that was what she feared; but there was no proposition to remove her out of the power of those who threatened her, or any means proposed to protect her from actual violence from the sources from which she testified she feared it. She hardly needed to be told that, so far as any *legal* consequences to her were concerned, she would not be injured by telling the truth with respect to the circumstances of a crime with which she had no criminal connection, for no one is supposed to be so ignorant or degraded as not to know that.

5. Mr. Bentley, a witness for the defence, to contradict certain statements of Richman called out by the defendant on cross-examination, testified in substance that Richman did not, prior to his testifying in his own behalf on his trial, ever, in his presence or hearing, charge the defendant, Lawlor, with the shooting of Malone. Upon his cross-examination, he was asked if he did not, at the coroner's inquest, state to Mr. Dyckson that Richman had so charged the shooting on Lawlor, and he answered that he did not. Mr. Miller, a witness called by the state in rebuttal, was asked if he did not hear such a statement by Mr. Bentley to Mr. Dyckson at the coroner's inquest. The defendant's counsel objected to the question as incompetent and immaterial, the objection was overruled, and an exception by the defendant noted. The witness answered that he did. There was no error in the reception of this testimony. It is competent, for the purpose of weakening the weight of the testimony of a witness, to show that he has made statements out of court inconsistent with his testimony in court, his attention being first called to time, place and circumstances; and we are not aware of any limitation of the rule, and see no reason for any, by which witnesses called so to contradict other witnesses may not be themselves contradicted in like manner, at least within reasonable limits. It is urged upon us that the original testimony of Richman upon the point was irrelevant. It is true that a witness cannot be contradicted in this manner upon irrelevant matter. But we think the subject of inquiry was not irrelevant. Richman had testified on his direct examination that the fatal shots were fired by Lawlor; and if he had not made any such charge until a considerable time after the

shooting, that fact was competent to go to the jury as bearing in some degree upon the weight to be given to his testimony, the force and effect of it being, of course, for the jury.

6. The counsel for the defendant requested the court to instruct the jury "that they must find that Charles Richman is an accomplice, and, if an accomplice, they cannot return a verdict against defendant, under this testimony, unless they find that, in addition to the statement of Richman, the state has made out a *prima-facie* case against the defendant," which instruction was refused, and the defendant excepted. It is not clear to my mind that the evidence in the case called for any instruction upon the hypothesis that Richman was an accomplice. His testimony shows, if believed, that the prisoner and himself entertained the purpose or intention of affording each other assistance in an assault upon Malone, but neither of them admitted any participation in the shooting. Each testified substantially that the shots were fired by the other, without his advice, instigation or foreknowledge. There seems to have been no contention at the trial but that the shooting was by one of them; and there was no direct testimony, except their own, as to which was the guilty agent. But assuming that Richman might, upon the testimony, have been found to be an accomplice, it was a question to be determined by the jury whether he was such or not. If the court had ruled, as matter of law, that he was an accomplice, the ruling would, in effect, have taken the case from the jury. It would have included an assumption not only of Richman's guilt, but of the prisoner's also. The fact which rendered corroboration of Richman necessary to a conviction of the prisoner was as much for the jury as any other question in the case, and any proper instruction by the court as to the necessity of corroboration ought consequently to have been hypothetical. *Com.* v. *Ford,* 111 Mass. 394; *Com.* v. *Glover,* Id. 395.

The second branch of the instruction refused was also erroneous. "*Prima facie* evidence of a fact is in law sufficient to establish the fact, unless rebutted." 2 Bouvier's Law Dict. 370. "*Prima facie* evidence we understand to be evidence which, standing alone and unexplained, would * * * warrant the conclusion to support which it is introduced." *Emmons* v. *Westfield Bank,* 97 Mass. 230. These defi-

nitions will, we think, be acquiesced in as correct. A *prima facie* case is, therefore, a case *made out* by proper and sufficient testimony. The statute respecting the use of the testimony of an accomplice is as follows: "A conviction cannot be had upon the testimony of an accomplice, unless he is corroborated by such other evidence as tends to convict the defendant of the commission of the offence; and the corroboration is not sufficient if it merely shows the commission of the offence or the circumstances thereof." Gen. St. 1878, c. 73, § 104. We think a reasonable construction of this section does not require a case to be made out against the prisoner sufficient for his conviction before the testimony of an accomplice can be considered, for that would make it available only when its necessity did not exist; neither do the terms used require such an interpretation. The corroborating evidence must, independently of the testimony of the accomplice, tend in some degree to establish the guilt of the accused, but need not be sufficiently weighty or full, as, standing alone, to justify a conviction. We have met with no case coming under the common law or statutory law in which full proof was required by way of corroborating evidence.

In construing a statute identical in terms, the supreme court of California say: "As we construe this provision, the corroborating evidence must of itself, and without the aid of the testimony of the accomplice, tend in some degree to connect the defendant with the commission of the offence. It need not, of course, be sufficient to establish his guilt, for in that event the testimony of the accomplice would not be needed. *People* v. *Ames*, 39 Cal. 403. See, also, *Montgomery* v. *State*, 40 Ala. 684; *Craft* v. *State*, 3 Kansas, 450. For these reasons the instruction asked was properly refused.

It is further urged by the counsel for the defendant that the court should have charged the jury that the defendant could not be convicted upon the uncorroborated testimony of an accomplice, and that it was error not so to charge. But an omission to charge the jury upon a particular point is not error, unless the court is asked so to do at the trial. There would be many mistrials if the validity of the verdicts depended upon the judges charging the jury upon every point of law which could properly be raised in the case.

The instruction asked in behalf of the defendant having been properly refused, if he deemed it important or desirable that any other or different instruction upon the subject should be given, he should have asked it, and, if it was not given, taken his exception. Under a statute of Indiana, expressly requiring the court to charge the jury in criminal cases that "a defendant is presumed to be innocent until the contrary is proved, and that, when there is reasonable doubt whether his guilt is satisfactorily shown, he must be acquitted," the supreme court of that state held that an omission so to charge must be excepted to at the time, and before the jury retire to consider of their verdict, so that the court may supply the omission; and that it was too late to make the objection for the first time on the motion for a new trial. *Murray* v. *State*, 26 Ind. 141. The rule is an important and salutary one. If, possibly, the omission may have led to a verdict which is not justified by the evidence, another mode of relief, by motion for a new trial on that ground, is open.

7. It only remains to consider whether the verdict was justified by the evidence. In addition to the general features of the evidence above alluded to, another important feature, tending especially to connect the prisoner with the commission of the crime, related to the possession of the pistols above mentioned, and the ascertainment from which of them the bullets taken from the body of Malone were shot. The testimony for the state tended to show that Richman borrowed, at the house of Lou Reynolds, before the party started for the ride, a pistol of Smith & Wesson manufacture, having grooved or rifled barrels, only two of which, out of five, were loaded, and that upon the return of the party to the house the same evening, after the homicide, this pistol was restored by Richman with the two barrels still loaded, which were then discharged; that the defendant obtained a pistol at the same house, before the ride, of a different manufacture, having its barrels grooved only at the muzzle; and generally there was testimony tending to show that the bullets taken from Malone's body could not, from their appearance, have been shot from the Smith & Wesson revolver, but might well have come from the other.

As to many of the facts and circumstances testified to in this connection, and which pointed to the defendant as the guilty agent, Rich-

v.28—15

man's testimony was corroborated by other witnesses, and to such an extent as we think would be sufficient for the corroboration of an accomplice in order to warrant a conviction. Lawlor testified that he took no pistol with him on the ride, and had none at the saloon where the homicide was committed. With the testimony thus conflicting, and much of it from such sources, and delivered under such circumstances as were not calculated to inspire confidence, it was plainly the province of the jury to sift and weigh it, and determine its effect; and we are of opinion that there is no ground disclosed by the record for disturbing their verdict.

It is, therefore, ordered that the judgment appealed from be affirmed, and the sentence pronounced upon the defendant be executed.