## MINICH v. THE PEOPLE.

1. Since the statute in this state requires that a defendant charged with a felony shall be furnished, prior to his arraignment, with a copy of the indictment, the omission to read the indictment at the time of his arraignment, the other requisites being complied with, and his attorney in his presence expressly waiving such reading, is not error.

2. It is not error to permit the examination of witnesses in chief whose names were not furnished the accused prior to his arraignment, a list of such witnesses being given before they were called to testify, and no objection being made to them upon this ground.

3. The accused being furnished before trial with a list of the petit jurors, and having interposed no objection either to going to trial or to impaneling the jury on the ground that he was not furnished with such list previous to arraignment, cannot be allowed to interpose such objection for the first time after his conviction.

4. Where a challenge by the accused to a juror for cause should have been sustained, but the objectionable juror was subsequently peremptorily challenged by defendant, and, at the time of going to trial, defendant had left unused seven peremptory challenges, *held*, that the error was not fatal to the judgment.

5. The declaration in a record that the jury were "duly sworn" implies that the oath was administered with the requisite solemnity. The record reciting all the duties to be performed by the jury, but omitting the technical expression "whom you shall have in charge," *held* sufficient.

6. The prosecution relying entirely upon circumstantial evidence, and it appearing that two or more persons were engaged in the struggle with deceased,— one of whom must have fired the fatal shot,— an instruction correctly stating the law as to accessories before the fact, *held* under our statute to be proper.

7. An instruction directing the jury that they are at liberty to disregard the entire testimony of a witness who has wilfully testified falsely to a material point is good.

8. An instruction telling the jury that in passing upon the credibility of defendant, who has elected to testify as a witness in his own behalf, they may consider his manner, consistency of statements, and any motive appearing which might induce him to testify falsely, *held* not error.

9. An instruction which defines a reasonable doubt to be "such a doubt as in the important transactions of life would cause a reasonable and prudent man to hesitate and pause," *held* not obnoxious to the objection that it authorizes the jury to convict upon a preponderance of proof.

10. When an instruction is asked telling the jury that in cases where the conviction is to rest upon circumstantial evidence only, if there is any other theory or hypothesis upon which the killing may be accounted for, they are to acquit," *held*, that the insertion by the court of the word "reasonable" before the word "theory" was not error.

11. When a proposition of law is once clearly stated in the charge, a repetition thereof in the same or different language only tends to confuse the jury; it is not error to refuse cumulative instructions.

### Error to District Court of Lake County.

THE facts are stated in the opinion.

Messrs. M. L. RICE, PHILIP O. FARRELL and TAYLOR and ASHTON, for plaintiff in error.

Attorney-General T. H. THOMAS, for defendant in error.

HELM, J. Indictment for murder. Cause tried in January last. Plaintiff in error convicted of murder in the first degree, and sentenced to death. By means of a *supersedeas* from this court execution stayed until such time as the trial could be reviewed upon the record before us. Thirty-four errors are assigned, fifteen of which are argued at length by counsel. We will now proceed to consider those sufficiently important or material to require notice.

I. It is urged that accused was not arraigned and given an opportunity to plead before trial. If this assignment of error is correct, the judgment must, of course, be reversed; because the arraignment and plea constitute the

issue to be tried, and consequently, if there was no arraignment and plea, there was nothing upon which a trial could be had. The record proper contains the following entry:

"Now, on this day, comes William Kellogg, who prosecutes the pleas of the people in this behalf, and comes defendant herein, Si Minich, in his own proper person, and by M. L. Rice, Esq., his attorney, and thereupon said defendant, being brought before the bar of the court and arraigned, and the indictment herein being read to him, and he being furnished with a copy of the same, and a list of the jurors and witnesses, and required to plead to said indictment, whereupon he answers and says he is not guilty in the manner and form as charged in said indictment, and of this he puts himself upon the country for trial, as does the district attorney."

The facts attending this proceeding, as disclosed by affidavits, in support of a motion to correct the record, are as follows: Plaintiff in error, being brought into court, accompanied by his attorney, and having received a copy of the indictment, after some little time, the exact length of which we are not advised, was called upon by the district attorney to plead. Thereupon he arose in presence of the court, and the district attorney began to read the indictment. When he had read a few words Mr. Rice, counsel for the accused, interrupted with the statement, substantially, "You need not read the indictment; we have read it, and know its contents. The record may show a formal arraignment and plea of not guilty." Whereupon the district attorney desisted from further reading of the indictment, and demanded of the accused whether he was guilty or not guilty, to which inquiry either he or his counsel responded "Not guilty," and the court directed such response to be entered of record. We think the weight of proofs in the affidavits sustains the conclusion that it was the accused himself who entered the plea.

Some of the ancient formalities connected with the arraignment of persons accused of crime have long been discarded. And now there seem to be in practice three acts attending the proceeding, viz., calling the defendant to the bar of the court to answer the matter charged against him; reading the indictment to him, and demanding of him whether he is guilty or not guilty. By statute in this state (section 954 of the General Statutes) it is expressly enacted that the declaration of his plea may be made orally, by himself or by counsel. Also, that the mention of the arraignment and such plea in the records of the court shall constitute the issue between the people of the state and the prisoner.

It will be observed from the foregoing that the question whether the response of "not guilty" was given by the accused or his attorney is of no importance. And upon examination of the facts above stated it will be seen that the arraignment in this case complied fully with the requirements mentioned except in one particular, i. e., the reading of the indictment. Is this a fatal defect? It is almost superfluous for us to say that the object to be attained by this step in the proceeding is to inform the prisoner of the exact character of the crime with which he stands charged, and for which he is to be tried. At common law the material importance of this proceeding is unquestioned, for it was the only means through which the accused was given by the state a complete description of the offense charged. Section 953 of the General Statutes now, however, expressly provides that before arraignment the prisoner shall be furnished with a copy of the indictment. There can be but one object in the enactment of this provision, and that is to accomplish the very purpose for which the reading of the indictment originally took place. It needs no argument to show that in this respect the latter method is better than the former; that with a copy of the indictment in his possession, to be read and reread by himself and by his counsel, he is

more thoroughly advised of the crime charged than he could possibly be in listening to the oral reading thereof by the district attorney. The latter officer might by mistake or through design omit to read or misread material matters therein contained, but when the accused has an exact copy for his own inspection, and that of his attorney, no such mistake or imposition is possible. Thus we see that not only is the statutory provision framed for the purpose of accomplishing the very object designed by the reading, but that it is a decided improvement, so far as the accused is concerned, in this regard. In Illinois, under statutes similar to ours, it is declared that "the statutory requirement of furnishing the prisoner with a copy of the indictment is a better means of information to him of the charge than the reading of the indictment to him." *Fitzpatrick v. People*, 98 Ill. 259. And it is substantially held that the reading of the indictment is not essential.

In the case of *Goodin v. State*, 16 Ohio St. 344, the accused had been furnished with a copy of the indictment at a period prior to his arraignment. Upon his arraignment the indictment was not read to him, but he entered his plea of not guilty, without objection, and the court say: "It would have been, then, an idle ceremony to read him a paper with the contents of which he was already familiar. The prisoner stood in court better informed of the character and nature of the charges preferred in the indictment than he could have been by any hasty reading thereof in court under the embarrassments incident to that situation." See 1 Bish. Crim. Proc. (2d ed.) § 733. There are cases which hold that even in indictments for a felony, if the accused, anterior to trial, plead not guilty, and the plea is accepted and recorded, the entire omission of an arraignment is cured on the ground of waiver. But we do not, in this connection, pass upon the question of waiver, except as to the reading of the indictment. We hold that, since the

reason for this proceeding is fully satisfied, the irregularity, if such it can be termed, is not fatal to the judgment.

Counsel complain that the accused in this case could not have been sufficiently informed of the contents of the indictment at the time he pleaded thereto, because, as they say in argument, a copy thereof had only been delivered about five minutes previous. This suggestion comes too late. Had the announcement been made when he was called upon to plead to the indictment, the arraignment would have been postponed; and from the fact that he stood by and made no objection or protest when his counsel declared "We have read the indictment, and know its contents," we must presume that the statement was true.

II. It is assigned as error that a list of all the witnesses who testified in chief upon the trial was not furnished to the accused previous to his arraignment, as required by section 953 aforesaid, which reads:

"Every person charged with murder or other felonious crime shall be furnished, previous to arraignment, with a copy of the indictment and a list of the jurors and witnesses. * * *"

It appears that the names of all witnesses who testified before the grand jury were indorsed upon the indictment, a copy of which instrument with such indorsement was delivered to the accused. It also appears that, before going to trial, a list of all other witnesses used in chief by the state was given him; and it further appears that no objection was interposed to witnesses testifying on the ground that their names were not furnished the accused *prior to arraignment.* Under our practice, the foreman always indorses upon the indictment the names of all witnesses examined by the grand jury. In Illinois, where the practice is similar but statutory, it is held that the list of witnesses commanded by the statute to be furnished the prisoner prior to his arraignment is to em-

brace those which were to be indorsed upon the indictment. And it is further held that the prosecution is not confined to the list of witnesses thus furnished prior to arraignment; "that the circuit court in the exercise of a sound discretion, and having a strict and impartial regard for the rights of the community and the prisoner, may permit such other witnesses to be examined as the justice of the case may seem to require." *Gardner v. People*, 3 Scam. 83; *Gates v. People*, 14 Ill. 433; *Logg v. People*, 92 Ill. 598, and cases cited. Accepting the view taken in these cases, and applying it to the case at bar, we must overrule this objection. Plaintiff in error was, as already stated, prior to the trial, furnished with the names of all witnesses called in chief, and there is nothing in the record which shows that he was in any way surprised or his rights prejudiced by reason of the fact that he was not sooner apprised that they would be sworn. See *Wilson v. People*, 3 Colo. 325.

III. A third objection to the judgment below is that the accused was not furnished with a list of the petit jurors *prior to his arraignment*. Although the record recites that this provision of section 953, aforesaid, was complied with, yet the facts appear to be as follows: That at the time of arraignment the entire panel of jurors had been excused for the term, and no special *venire* had been returned. It was therefore impossible to then arraign the defendant and also furnish the list of jurors. It further appears that before trial a list of the jurors summoned was delivered to defendant and consulted by his counsel in selecting the jury; also, that no objection whatever was interposed upon this ground either to arraignment or to impaneling the jury and going to trial. With reference to the statutory requirement aforesaid concerning jurors, this court has held that it relates to an important right. "It gives the prisoner and his counsel an opportunity to inquire concerning and consider upon the character, dispositions and relations of

those composing the regular panel, and to select such as they think will give the prisoner a fair and impartial trial." *Stratton v. People;* 5 Colo. 276; *Mooney v. People,* 7 Colo. 218; *S. C.* 3 Pac. Rep. 235. But in both of these cases the question discussed and decided had reference solely to the improper depletion of the regular panel by the sustaining of challenges for cause upon insufficient grounds, and the proposition now urged was not presented.

It would seem that, since in this case the list of jurors was furnished prior to trial, and the defendant was thus given an opportunity to secure the requisite information concerning them, the reason of the law was complied with. If it appeared that the defendant was injured or put to a disadvantage by the failure to furnish this list prior to arraignment, particularly if he entered a timely protest, his conviction ought not to stand. But there is nothing in the record before us from which the slightest prejudice to his rights on this account can be inferred. Commenting upon this subject, the supreme court of Illinois say that, while it is the duty of courts to prisoners, " among other things, to notify them in due time as to what men constitute the panel out of which the jurors for their trial should be called, * * * it is not, however, every little inaccuracy which may occur in this regard for which a trial should be set aside." *Goodhue v. State*, 94 Ill. 37. And they hold, under just such a statute as ours, that, unless the accused has been " put to a disadvantage " from the irregularity, his conviction ought not to be interfered with.

In Ohio, a statute requiring that a list of jurors be furnished, in capital cases, " at least twelve hours before the trial " is construed to be simply directory as to a duty to be performed by the state. It is said that, " if a defendant in a criminal prosecution wishes to avail himself of such omission of duty on the part of the state, he

must do it on motion before trial, or interpose it as an objection to being put on his trial." The doctrine that a waiver of this right may take place is fully recognized. *Fouts v. State*, 8 Ohio St. 98. On the subject of waiver as to this matter, see *Pressley v. State*, 19 Ga. 192; *State v. Russell*, 33 La. Ann. 135. Mr. Bishop supports with a strong array of authorities the proposition that "if, while the petit jury is being impaneled, the prisoner knows of a cause of challenge against one of them, or the whole, but declines to interfere then, he cannot afterwards bring forward the objection." 1 Bish. Crim. Law, § 997, and cases cited. Yet the reason for recognizing the doctrine of waiver, in connection with such questions, is not so strong as it is in the matter now before us. The objection under consideration does not, in our judgment, justify reversal.

IV. During the selection of the jury, Flucken, one of the jurors called, was challenged by the defendant for cause. The examination upon his *voir dire* discloses such a state of mind on his part as would have justified the court in sustaining the challenge. He had formed a decided opinion upon the merits, and in his testimony several times declared that he would be influenced by the opinion and could not fairly and impartially try the case. There is little doubt but that this juror, like many other business men, was anxious to avoid the performance of his duty in the premises, and there is strong justification in his answer to the questions propounded, for the indignation aroused in the mind of the judge. But considering his testimony alone, as we find it in the record, it falls short of indicating that he would have acted as an impartial juror. This court has held that section 1893 of the General Statutes transforms the character of the objection mentioned, from a ground of principal challenge, as at common law, to a ground of challenge to the favor, and that, by virtue of the statute, the finding by the

court of the *fact of the juror's indifference* is not review-
able. *Solander v. People,* 2 Colo. 48; *Jones v. People,*
id. 351.

It is unnecessary for us now to determine whether or
not the position taken in these cases is affected by subse-
quent decisions, or by other legislation; for, admitting
that the finding upon this question is reviewable, and
that the court in this case erred in denying defendant's
challenge, we are still of opinion that the error under the
circumstances disclosed does not authorize a reversal. It
appears that Flucken was challenged by the accused per-
emptorily, and consequently his previous opinion could
in no way have influenced the verdict. It also appears
that when the accused accepted the jury and went to
trial, he had exhausted but eight of his fifteen peremp-
tory challenges. In view of these facts we are constrained
to hold that the error in denying the challenge for cause,
if such it was, could not have injured accused, and there-
fore, being error without prejudice, it cannot be fatal to
the judgment. Upon this subject the cases are not all in
accord, but the decided weight of authority is in favor of
the view adopted. We have not given, and shall not at-
tempt to give, the reasons at length upon which our
conclusion is based. We accept the conclusion and con-
tent ourselves by referring counsel for the reasoning to
some of the authorities in which the doctrine is main-
tained. Proff. Jur. Trials, § 165; *Erwin v. State,* 29
Ohio St. 186; *State v. Elliott,* 45 Iowa, 486; *State v. Law-
lor,* 28 Minn. 216; *S. C.* 9 N. W. Rep. 698; *State v. Davis,*
41 Iowa, 311; *Lum v. State,* 11 Tex. App. 483; *McGowan
v. State,* 9 Yerg. 184; *Stewart v. State,* 13 Ark. 720;
*Benton v. State,* 30 Ark. 328; *Mimms v. State,* 16 Ohio
St. 221; *Wilson v. People,* 94 Ill. 299.

V. There was no error in allowing the challenge to the
juror Priddy. His *voir dire* examination showed that
he had formed and expressed a positive opinion concern-
ing defendant's guilt or innocence; that such opinion was

obtained largely from statements made to him by witnesses; that he had business relations with Gillespie, who was jointly indicted and a co-defendant with Minich, but who was not on trial, owing to a severance allowed by the court; and that he supposed himself to entertain a feeling of "bias at the outset." Upon these facts we think the challenge by the district attorney was wisely sustained.

VI. Another objection presented is that the jury were not legally sworn to try the cause. The record entry, which contains all the information before us on the subject, after naming the jurors, reads as follows:

"Twelve good and lawful men of the county of Lake, who were duly impaneled, tried and sworn to well and truly try the issue joined, and a true deliverance make between the people of the state of Colorado and Si Minich, the prisoner at the bar, and a true verdict render according to the law and the evidence."

There is with us no statutory form for this oath, and it should be substantially as required at common law. The defects pointed out by counsel are the omission of the clause "whom you shall have in charge," and the concluding phrase or invocation "so help you God." Had the record simply contained the declaration that the jury were "duly sworn," or that they were "sworn according to law," it would have been sufficient; but while conceding this, a number of the decisions hold that where an attempt is made to set out the oath administered, it must affirmatively appear that no material part was omitted. It will be noticed that the record before us does not purport to give the exact oath administered to the jury. It is in narrative form; it recites the fact that they were duly sworn, and then proceeds to indicate generally what they were sworn to do. The declaration that they were *duly sworn* implies that the oath was administered with the requisite formality and solemnity; that the jurors in open court were required to hold up their hands and

promise to perform the duties specified, there being an appropriate reference to the Deity; such as "in the pres-. ence of the ever-living God " or "so help you God." See *Wareham v. State*, 25 Ohio St. 601; *Bartlett v. State*, 28 Ohio St. 669; *Kerr v. State*, 36 Ohio St. 614. This disposes of counsel's objection in so far as it relates to leaving out the invocation in question.

Since, however, the record attempts to specify the duties which the jury in this case were sworn to perform, we are inclined to think there should, as to such duties, be no *material* omission. But no objection can be maintained upon this ground. The jury were sworn to "well and truly try the issue joined, and a true deliverance make between the people of the state of Colorado and Si Minich, the prisoner at the bar, and a true verdict render according to the law and the evidence." The expression " whom you have in charge " is in no sense material. It adds nothing in explanation of their duties, nor does it in any way enhance the solemnity of the oath; its omission, therefore, does not vitiate the proceeding. In most of the cases cited by counsel for plaintiff in error the defects held fatal consisted in omitting important matters pertaining to the *duties* of jurors.

VII. It is claimed that the eighth instruction given, declaring the law as to accessories before the fact, was authorized by no evidence in the record, and may have misled the jury. But little proof is required to support an instruction. The conviction in this case rests entirely upon circumstantial evidence. It appeared from exam-. ination of the ground where the body of deceased was found that a struggle had taken place; that probably two or more persons were engaged in the killing. The fatal shot must of course have been fired by one of them. And, supposing Minich to have been one of these persons, it might be impossible to know beyond a reasonable doubt whether he himself or a confederate did the shooting; but, under the statute, whether he did or not was a

matter of no importance. He was charged in the indictment both as principal and as accessory before the fact. If he was an accessory before the fact, he was equally guilty of the crime of murder. The circumstances shown fully warranted the charge.

VIII. The court also instructed the jury as follows:

"You are the sole judges of the credibility of the witnesses who have testified in this case, and if you believe that any witness in the case has wilfully testified falsely to any material point in the case, you are at liberty to disregard the entire testimony of such witness."

We are told that this instruction is wrong because it did not contain a qualification concerning corroborating testimony. It is said that if a witness wilfully testifies falsely to a material fact, but his testimony as to other material matters is supported by corroborating proofs or circumstances, the jury should be told that they need not discard it in so far as it relates to such other matters. This position would perhaps be correct should a court assume the doubtful authority of directing the jury that they *must* disregard the entire evidence of a witness wilfully testifying falsely to one material fact; but it is not correct in cases like the present, where the court simply suggests that the jury *may* disregard or that they are at *liberty* to disregard the testimony of such witness. In *Hamilton v. People*, 29 Mich. 173, the court say: "While the jury cannot be compelled to disregard all the testimony of a witness who has wilfully falsified, yet they may do so if they do not trust it." In *State v. Dwire*, 25 Mo. 553, the judge who writes the opinion uses this language:

"In my opinion, if the jury believe that a witness has wilfully testified falsely in respect to a material fact, it is their duty to disregard the whole of his testimony, and they should be so instructed by the court; but the other members of the court think that the jury ought only to be told that they *may* do what I think they are *bound* to

do." See *Paulette v. Brown*, 40 Mo. 52; *People v. Sprague*, 53 Cal. 491; *Day v. Crawford*, 13 Ga. 508.

IX. The thirteenth instruction contained in the charge reads as follows:

"The defendant in this case is a competent witness in his own behalf, and you are the sole judges of his credibility; and in determining such credibility you are at liberty to take into consideration any interest that the testimony may show such witnesses to have in the result of this case, if any is shown. Any motive that the testimony may show him to have to induce him to testify falsely, if any is shown; his manner on the witness stand; the probability or improbability of his statements; the consistency or inconsistency of his statements one with the other, and in fact all the circumstances proven in the case that may enlighten you as to whether such witness is telling the truth or not."

It is claimed that this part of the charge is error, for the reason that it improperly singles out the testimony of the defendant, and directs the attention of the jury thereto. There can be no doubt as to the impropriety of the court's selecting and giving undue prominence to certain *facts*, or commenting thereon to the exclusion of certain other and important parts of the testimony. Indeed, under our practice, his province is to state the law and omit all comment upon the evidence; but we know of no rule which prohibits the court's mentioning, in an appropriate way, a particular witness or class of witnesses. Our statute, speaking with reference to the testimony of a person on trial for crime, says that his interest, by reason of this fact, "may be shown for the purpose of affecting his credibility." In weighing the testimony of such person and passing upon its credibility, the jury have an undoubted right to consider all the circumstances under which it is given, including his particular personal interest in the result of the trial; and it is not error for the court to remind them of the latter

circumstance, provided, as in this instance, he refrains from intimating or suggesting the degree of weight to be given it. See *Bulliner v. People*, 95 Ill. 394; *People v. Morrow*, 60 Cal. 142.

X. The fourteenth instruction allowed says to the jury:

" You are further instructed that, while you are not to find the defendant guilty if you entertain a reasonable doubt of his guilt, you are not to search for a doubt. The doubt referred to must be such a doubt as would naturally arise in the mind of a reasonable man upon review of all the evidence in the case. It means a serious, substantial and well-founded doubt, and not a mere possibility of a doubt. *It is such a doubt as, in the important transactions of life, would cause a reasonable and prudent man to hesitate and pause*, and when you can say, after considering all the evidence in the case, that you have an abiding conviction of the truth of the charge, then you are in law satisfied beyond a reasonable doubt."

Considering this instruction as a whole, we discover nothing objectionable therein. Counsel argue that the portion thereof which we have italicised was misleading to the jury; that from it they were given to understand that if, in the important transactions of life, a reasonable man would act, then the doubt spoken of in the instruction would not exist. If their interpretation were correct, the objection would be much more difficult to answer, because a reasonable and prudent man often *acts* in connection with his important business upon a mere preponderance of proofs or considerations; and he may have many serious and reasonable misgivings as to the propriety of the step taken; but juries, in criminal cases, must acquit, if there exist in their minds a single reasonable doubt. We, however, think the inference drawn from the instruction by counsel, unwarranted. The language under consideration does not declare that the doubt, being defined, is one upon which a reasonable man would *act*. The jury are thereby informed that it is such a

doubt as would cause a reasonable and prudent man to *hesitate and pause;* there is a vast difference between *hesitating* or *pausing* and *acting.* The doubt which leads a man to hesitate or pause may be very far from being such a doubt as would control his action; and we think that if, in the important transactions of life, a doubt arises in the mind of a reasonable and prudent man which would not lead him to hesitate, or to pause and consider of his future action, that doubt is not such a reasonable doubt as would justify the jury, in a criminal case, in returning a verdict of acquittal. Upon a careful examination of the cases it will be found that the instructions on this subject which are held erroneous are those wherein the doubt is defined to be such an one as would *control* a reasonable man, or lead him to *act* in the transactions mentioned.

XI. The objection urged by counsel for plaintiff in error to the court's modification of the fifth instruction asked in behalf of their client is not well taken. By this instruction, as amended and given, the jury are substantially told that in cases where the conviction is to rest upon circumstantial evidence only, if there is any other *reasonable* theory or hypothesis upon which the killing may be accounted for, they are to acquit. We do not understand the law to be that any *unreasonable* or *imaginary* hypothesis, though it be supposed to arise from the evidence, will justify a verdict of not guilty. *People v. Cronin,* 34 Cal. 191; *State v. Nelson,* 11 Nev. 334; *Houser v. State,* 58 Ga. 78.

XII. The court did not err in refusing to give instructions numbered three and four asked by the defendant. Assuming these instructions to state correct propositions of law, they were fully covered by portions of the charge allowed; and while there are some cases which seem to recognize the doctrine that a good instruction asked should be given, though it be entirely cumulative, we think the converse is the better rule. When a proposition of law is once clearly stated, the repetition thereof

in the same or different language could only tend to embarrass and confuse the jury.

XIII. The last position of counsel which we deem of sufficient importance to notice is that the evidence does not justify or sustain the verdict. In view of the gravity of this case we have examined the voluminous record with more than the usual care. As a result of such investigation we do not feel warranted in interfering upon the ground of insufficient evidence. The conviction, it is true, is based upon circumstantial evidence. Yet there is woven about the defendant a web of circumstances which, coupled with his attempted avoidance thereof, point irresistibly to him, notwithstanding his claim of an *alibi*, as one of the guilty parties. His explanations of some of the suspicious incidents disclosed by the prosecution, such as his sudden acquisition of money similar in denomination to that taken from the body of the deceased, were accompanied by so many improbable circumstances that the jury might well have regarded them as strong corroborating evidences of guilt.

The defense has been ably conducted throughout. From first to last, counsel have spared no honorable effort to avert the demands of retributive justice. They have assigned for consideration and skilfully argued in this court every question which could possibly lay the foundation for legal interference. No stone has been left unturned in the effort to rescue their unhappy client from the doom awaiting him. But in the discharge of the duties imposed upon us, and under the solemn obligation of our official oath, we are reluctantly compelled to say that they have been unsuccessful.

The judgment is affirmed, and in pursuance of the statute an order will be entered of record designating the 5th of February, A. D. 1886, as the date for executing the sentence pronounced.

*Affirmed.*