## STATE v. JOHN T. SMITH AND OTHERS.
## CY LYONS, APPELLANT.[1]

December 24, 1919.

No. 21,534.

**Criminal law — deposit of fraudulent ballots.**

1. Defendant was indicted with others, for the crime of putting fraudulent ballots into the ballot box at a city election. The state's claim was that according to a general plan or conspiracy in which defendant participated, the names of fictitious persons were registered, that on the night before election defendant and others marked a number of fictitious ballots, and that defendant deposited the ballots in the box on election day. Defendant was convicted.

**Same — conviction sustained by evidence.**

2. The evidence of defendant's participation in the crime was sufficient to sustain his conviction.

**Accomplice — question for jury.**

3. The court properly submitted to the jury the question whether Hammett, one of the election clerks, was an accomplice. That Hammett was guilty of the distinct crime of entering fictitious names on the poll book does not make him an accomplice in the crime of which defendant was convicted. The test as to whether a witness is an accomplice is, could he have been indicted and punished for the offense of which defendant is charged? One connected with the crime as an accessory after the fact is not an accomplice.

**Corroboration of testimony of accomplices.**

4. The testimony of Hammett affords sufficient corroboration of the testimony of the accomplices. His testimony that he thought defendant was one of the participants he saw in the election booth was corroborative evidence of identification. It is not necessary that the corroborative evidence should be sufficient, standing alone, to warrant a conviction. It is only necessary that it shall tend in some degree to prove that defendant committed the crime.

**Refusal to charge jury.**

5. It was not error to refuse to instruct the jury that if defendant

[1]Reported in 175 N. W. 689.

was not actually in the polling booth on election day they must acquit. It was not necessary that the accomplice be corroborated on every point.

**Same.**

6. It was not error to refuse to instruct the jury that if they found Hammett was an accomplice then there was no sufficient corroboration of the accomplice.

**Evidence.**

7. It was not error to receive evidence of fraudulent registration on registration days as part of the conspiracy in which defendant participated although defendant was not present at the time of registration.

Defendant was indicted by the grand jury of Ramsey county charged with the crime of fraudulently putting ballots into a ballot box at an election in the city of St. Paul, tried in the district court for that county before Michael, J., and a jury which found him guilty as charged in the indictment. From an order denying his motion for a new trial, defendant appealed. Affirmed.

*Thomas J. Newman* and *Thomas R. Kane,* for appellant.

*Clifford L. Hilton,* Attorney General, *James E. Markham,* Assistant Attorney General, *Richard D. O'Brien,* County Attorney, and *Harry H. Peterson,* Assistant County Attorney, for respondent.

HALLAM, J.

1. Defendant was indicted with several others, charged with the crime of fraudulently putting 190 ballots into the ballot box of the first election district of the Third ward, of the city of St. Paul, at the city election, held May 7, 1918. It stands admitted that the crime was committed by some persons. It also stands admitted that the crime had been planned for some time prior to the election, and that the ground work was in part laid at the registration preceding the election. The method employed was to register the names of a large number of fictitious persons, then to mark the requisite number of ballots with crosses opposite names of the candidates to be benefited, and then to put the ballots into the box on election day. The plan was a simple one and dispensed with the cumbersome and expensive machinery incident to the use of repeaters, yet it

required the co-operation, or acquiescence, or at least the inaction, of the judges and clerks of election. John T. Smith, who was neither a judge nor a clerk, was apparently the lieutenant in charge. Smith was indicted, but not arrested. Some of the judges of election were active participants in the crime. Defendant was neither a judge nor a clerk of election, nor is there any evidence of his participation in this crime until the evening before the election. The claim of the state is that on the evening before election defendant met with Smith, P. J. Costello and Scofield, one of the election judges, in a room in a down town hotel, and there marked the spurious ballots that were to be used the next day, that defendant took the ballots and deposited them in the ballot box early in the morning of election day. The jury found defendant guilty and he appeals.

2. Defendant contends that the evidence is not sufficient to sustain the verdict. Were is not for the fact that some of the witnesses were accomplices and others claimed to be such, there would be little question that the evidence is sufficient.

Piemeisl, one of the election judges, and keeper of the hotel mentioned, testified positively that at about eight o'clock in the evening of the sixth, Costello and defendant came to his hotel, that they joined Scofield who was already there, took the ballots to a private room, locked the door from the inside, and remained there about two hours.

Scofield testified that he was in this room with Smith, Costello and "a fellow by the name of Lyons," who looked like defendant; that Costello and Lyons marked the ballots, witness initialed them and handed them to Smith, Smith folded them and handed them to "this fellow here," meaning Lyons; that Lyons put them in his pocket; that early on the morning of election day the same men he met in the room the evening before came to the voting booth, and that "Lyons" put the spurious ballots into the box.

Reavey, another election judge, testified that defendant came into the booth with Costello. Reavey did not see the ballots put into the box, but, while defendant and Costello were there, he saw that there were a large number of ballots in the box and that they "couldn't have been" deposited by legal voters.

Hammett, a clerk of election, testified that he thought he saw defendant in the booth on election day, that he thought defendant came in with

Costello and went into a back room with Costello and Smith. Asked again to give his best recollection as to whether defendant was the same man he saw with Costello and Smith, he said: "I think so but I don't want to be positive."

Dumford, a worker for some of the candidates not benefited by the fraud, called at the booth at about 8 p. m. with some friends to look after the interests of his candidate. He had trouble getting in and was told by those inside he must not be around the booth. While they were standing outside, defendant came along, asked what he was doing there and who sent him. When Dumford told him he was there to watch the count and that the labor candidates had sent him down, defendant said that was all right and walked away.

Against this evidence of the state, defendant offered his own denial. He denied that he even knew Scofield, Piemeisl, Hammett or Smith. In proof of an alibi he offered testimony that he was in Winnipeg on May 6 and 7. The proof of alibi seemed to have some persuasive force, until it was made to appear that he had testified under oath on a former occasion that he was in St. Paul on election day, May 7. His only explanation of his former testimony was that he was confused and meant primary election day, but this explanation fell to the ground when, almost immediately, he admitted that he was not in the city on primary election day.

The evidence was quite sufficient to identify defendant as one of the perpetrators of this crime and to sustain a verdict of guilty.

3. The court instructed the jury that, if the offense charged in the indictment was committed, then Scofield, Reavey and Piemeisl were all accomplices, and that defendant could not be convicted on the testimony of these witnesses, unless they were corroborated by other evidence. The court then submitted to the jury the question whether Hammett was an accomplice. Defendant contends that the court should have instructed the jury as a matter of law that Hammett was by his own admissions an accomplice. With this contention we do not agree.

The rule that a person shall not be convicted of a crime on the uncorroborated testimony of an accomplice is a statutory rule. G. S. 1913, § 8463.

At common law the judges might advise the jury not to return a verdict of guilty on the uncorroborated testimony of an accomplice, but they were not required to give this advice. 2 Bishop, Crim. Proc. § 1169; Commonwealth v. Wilson, 152 Mass. 12, 25 N. E. 16; Pollock v. Pollock, 71 N. Y. 137; Black v. State, 59 Wis. 471, 18 N. W. 457.

It was stated in the argument in this court that Hammett pleaded guilty to the crime of attempting to unlawfully enter false and fraudulent names on the poll books. This is a distinct crime under G. S. 1913, § 610, and is not the same crime as that for which defendant was convicted, namely, fraudulently putting ballots in the ballot box as prohibited by section 611. The fact that Hammett committed another distinct crime does not make him an accomplice in the commission of this one. In order that he may be an accomplice he must have been concerned with the same crime. The evidence of Hammett's connection with the offense of which defendant was convicted is substantially as follows: He was called to act as clerk of election on election morning. He had no connection with the election frauds before that time. When he arrived at the booth, Scofield, Piemeisl and Smith were already there. Reavey was there or came soon after. Hammett was given one of the poll books in which the law required him to enter the names of electors regularly voting. Smith called off names from a list, and Hammett entered them in the poll book. There is no evidence that he saw defendant deposit the ballots for city officers in the box. He then gave the testimony above mentioned, as to defendant's presence in the booth, and as to Costello and Smith and defendant going into the back room together. He testified that Smith took a pad of ballots with him, and when they came out Smith deposited ballots in a box. It is claimed by the state that these were not the ballots marked the night before, but ballots on a charter amendment. Later Smith read off other names, and Hammett entered them in the poll book. When the polls were closed he assisted in counting the ballots and signed the return.

The test as to whether a witness is an accomplice, is: Could he have been indicted and punished for the offense of which defendant is charged? 16 C. J. 671, and cases cited; State v. Durnam, 73 Minn. 150, 165, 75 N. W. 1127; State v. Gordon, 105 Minn. 217, 117 N. W. 483, 15 Ann.

Cas. 897. In the above cases, the test was said to be whether he could be indicted for the offense "as principal or accessory."

4. The trial judge in his charge followed this language. In State v. Price, 135 Minn. 159, 160 N. W. 677, the court said:

"To make a witness an accomplice, it seems logical that it should appear that a crime has been committed, that the person on trial committed the crime, either as principal or accessory, and that the witness co-operated with, aided or assisted the person on trial in the commission of that crime either as principal or accessory."

At common law there was a well-defined distinction between an accessory before the fact and an accessory after the fact, the former being one who aided or abetted the principal offender before or at the time of the commission of the crime, and the latter one who aided the principal to escape after the crime was committed. In none of the cases above cited was it stated whether, by use of the word "accessory," was meant accessory before the fact or accessory after the fact, or both. Strictly speaking there is no such thing now as an accessory before the fact, for an accessory before the fact is, by our statute, made a principal, G. S. 1913, § 8478, while an accessory is by statute defined as:

"Every person not standing in the relation of husband or wife, parent or child, to the offender, who, after commission of a felony, shall harbor, conceal, or aid such offender, with intent that he may avoid or escape from arrest, trial, conviction or punishment, having knowledge or reasonable ground to believe that such an offender has committed a felony or is liable to arrest, is an accessory to the felony."

In none of the cases above cited was there any occasion to determine whether an accessory after the fact was an accomplice. The language above quoted from the Price case makes it clear that the court did not have in mind an accessory after the fact, for it defines as one of the essentials of an accomplice "that the witness co-operated with, aided or assisted the person on trial in the commission of that crime." Such a witness could only be an accessory before the fact, or, under our statute, a principal. We do not feel therefore that the question whether an accessory after the fact is an accomplice has been foreclosed by the decisions cited.

The great weight of authority elsewhere is that an accessory after the

fact is not an accomplice. 16 C. J. 675; State v. Jones, 115 Iowa, 113, 88 N. W. 196; Walker v. State, 118 Ga. 757, 45 N. E. 608; State v. Umbel, 115 Mo. 452, 22 S. W. 378; Levering v. Commonwealth, 132 Ky. 666, 117 S. W. 253, 136 Am. St. 192, 19 Ann. Cas. 140; People v. Ricker, 51 Hun, 643, 4 N. Y. Supp. 70, affirmed 115 N. Y. 668; State v. Riddell, 38 R. I. 506, 96 Atl. 531; State v. Phillips, 18 S. D. 1, 98 N. W. 171, 5 Ann. Cas. 760. We are of the opinion that this is the most satisfactory rule and we adopt it.

The reasons for requiring the testimony of an accomplice to be bolstered up by corroborating testimony are, that it is the testimony of one admittedly corrupt, and that it is likely to have been given in the hope that, by turning state's evidence, the witness may receive clemency. 2 Bishop, Crim. Proc. § 1169; United States v. Van Leuven (D. C.) 65 Fed. 78. These reasons do not apply with the same force to the testimony of an accessory after the fact as to a participant in the crime.

The question whether a witness is an accomplice or not is usually a question for the jury. State v. Lawlor, 28 Minn. 216, 9 N. W. 698. We think the question whether Hammett was an accomplice was properly submitted to the jury. He was not, as a matter of law, a principal in the crime charged against the defendant.

5. The testimony of Hammett affords ample corroboration of the testimony of the witnesses who were accomplices. His testimony that he thought defendant was the man he saw in the booth constitutes corroborative evidence of identification. Commonwealth v. Cunningham, 104 Mass. 545; State v. Franke, 159 Mo. 535, 60 S. W. 1053. It is not necessary that the corroborative evidence should be sufficient, standing alone, to warrant a conviction. It is only necessary that it shall tend in some degree to prove that the defendant committed the crime. If the testimony of the accomplices and the corroborating testimony together establish the guilt of defendant beyond a reasonable doubt, a verdict of guilty is sustained. State v. Lawlor, 28 Minn. 216, 9 N. W. 698. The evidence is sufficient to sustain the verdict.

6. Defendant contends that the court should have instructed the jury that "unless it found that the defendant was actually present in the polling booth on the 7th day of May and aided, assisted and abetted in some manner in the placing of the fictitious ballots in the ballot box, then

the defendant should be acquitted." The failure to give such instruction was not error. The jury might find defendant guilty, even though he did not actually participate in placing the fictitious ballots in the box, if the events of the night before occurred as narrated. It was not necessary that the accomplices be corroborated on every point. If corroboration on any point tends to prove defendant's participation in the crime, then all of the testimony of the accomplices may be taken into account. The proposed instruction singled out and gave undue emphasis to particular defenses, a practice not to be commended, 16 C. J. 1036; State v. Meyers, 132 Minn. 4, 155 N. W. 766, and in effect directed or suggested a finding on particular facts, a practice the court is not required to follow.

Defendant contends that the court should have instructed the jury that, if it found that Hammett was an accomplice, then there was not sufficient corroborative evidence in the case to warrant a conviction. Failure to give this instruction was not error for several reasons: First, the court was not asked to do so; second, such an instruction would have been subject to the same general objection as the proposed instruction last above discussed; and third, there was in fact other corroborative evidence. There was other evidence that defendant registered and voted in contradiction of his own testimony. There was other evidence that he was about the polling booth, manifesting an interest in those who wanted to get in as watchers, and whose admission was for a time denied by his alleged conspirators on the inside, and there was evidence from which the jury might find, and did undoubtedly find, that he had interposed a false alibi. We think these items of evidence alone constituted corroboration sufficient to take the case to the jury. 16 C. J. 707, § 1445; People v. McLean, 84 Cal. 480, 24 Pac. 32 (contradictory statement by defendant as to his whereabouts at time of crime) ; .Fort v. State, 52 Ark. 180, 11 S. W. 959, 20 Am. St. 163 (false alibi) ; State v. Clements, 82 Minn. 434, 85 N. W. 229 (book entries made by accomplice) ; Simond v. State, 127 Md. 29, 95 Atl. 1073 (registration book in fraudulent registration case).

Defendant contends that the court erred in receiving the testimony of Scofield, Piemeisl and Reavey as to what was said and done by members of election board on registration days in absence of defendant. No par-

ticular testimony is referred to in connection with this assignment of error. The evidence tends to prove that these witnesses, together with defendant, associated and conspired for the purpose of putting fraudulent ballots in the ballot box; and that their plan was carried out. In carrying out this plan fictitious names were registered on the registration days. When the evidence shows a conspiracy, evidence of transactions between part of the conspirators in furtherance of the common design and object of the conspiracy is admissible against all. State v. Cline, 27 S. D. 573, 132 N. W. 160; State v. Evans, 88 Minn. 262, 92 N. W. 976; State v. Dunn, 140 Minn. 308, 168 N. W. 2.

Order affirmed.