State of Minnesota *vs.* Michael Quinlan and another.

January 21, 1889.

Criminal Law—Compounding Crime—Accomplice.—In a prosecution for taking money, upon an agreement to withhold evidence of a crime, under section 112 of the Penal Code, it is not necessary that the testimony of the person who makes the agreement with and pays the money to the accused should be corroborated. Such person is not an accomplice, within the meaning of Gen. St. 1878, c. 73, § 104.

Same—Indictment—Variance in Proof.—In this case the offence, concerning which it was alleged the corrupt agreement had been made, was described in the indictment as having been committed by Christ Snyder and Fred Vongard in selling spirituous liquors, to wit, one glass of whisky, without first having obtained a license therefor. The proof was that one Gotlieb Beisswinger, who was also known as Christ Snyder, and one William Bungard, had sold one glass of beer, having no license for such sale. *Held,* that in respect to the name of one of these parties, and in regard to the kind of liquor sold, there was a fatal variance between the pleading and the proof.

The defendants were tried and convicted in the district court for Hennepin county, before *Hicks,* J., and a jury, upon the indictment

recited in the opinion. They appeal from an order refusing a new trial.

*James C. Worrall,* for appellants.

*Moses E. Clapp,* Attorney General, and *F. F. Davis,* for the State.

COLLINS, J. Prosecution, resulting in a conviction, under section 112 of the Penal Code of Minnesota. The body of the indictment is as follows:

"*The State of Minnesota* against *Michael Quinlan and Nathaniel W. King.*

"INDICTMENT.

"Michael Quinlan and Nathaniel W. King are accused by the grand jury of the county of Hennepin, in the state of Minnesota, by this indictment, of the crime of compounding a crime, committed as follows: The said Michael Quinlan and Nathaniel W. King did, on the 20th day of October, A. D. 1887, at the city of Minneapolis, in said Hennepin county, wilfully, unlawfully, and wrongfully take from one Gotlieb Beisswinger money, to wit, one hundred dollars genuine and current money of the United States of America, a more particular description of which said money is to the grand jury unknown, upon an agreement then and there made by the said Michael Quinlan and Nathaniel W. King with said Gotlieb Beisswinger to withhold evidence of a crime, to wit, the crime of selling liquor without first having obtained license therefor; which said crime had heretofore, to wit, on the 12th day of September, A. D. 1887, been committed by Christ Snyder and Fred Vongard, in this: that the said Christ Snyder and the said Fred Vongard did, on the 12th day of September, A. D. 1887, in said Hennepin county, wilfully, unlawfully, and wrongfully sell spirituous liquor, to wit, one glass of whisky, to one N. H. King, without first having obtained license therefor,—said Christ Snyder and Fred Vongard not being then and there a regular licensed druggist, dispensing said liquor in filling a prescription made by a regular, reputable, and duly-licensed physician in the practice of his profession; said crime not being then and there a case where a compromise is allowed by law. Contrary to the statute in such case made and provided, and against

the peace and dignity of the state of Minnesota.    Dated at Minneapolis, in said Hennepin county, this 2d day of March, A. D. 1888.

"J. A. WOLVERTON,

"Foreman of the Grand Jury."


It was assumed by both parties, upon the argument of this case, that the offence charged is that of compounding a crime, (which is analogous to the common-law offence of compounding a felony,) when, in fact, defendants are accused of another and distinct offence,— mentioned in the same section of the Code,—that of taking money to withhold evidence of a crime.    We call attention to this now, that our views, as expressed further on, may be understood by counsel.

Upon the appeal two points are made by defendants—*First,* that they were convicted upon the uncorroborated testimony of an accomplice, the Gotlieb Beisswinger mentioned in the indictment, who alone testified to the main fact, and was flatly contradicted by each of the other witnesses, some of whom were called by the state; *second,* a fatal variance, in two essentials, between the allegations of the indictment and the proof.    In discussing these alleged errors it will be well to first consider the relationship existing between Beisswinger, who made the agreement with defendants, (in partnership as private detectives, engaged in securing evidence of the infraction of the laws regulating the sale of intoxicants,) and to one of whom he paid the money, in the presence of the other.    Was he an accomplice, whose testimony must be corroborated before a conviction can be had, as provided by Gen. St. 1878, *c.* 73, § 104?    If so, there should have been testimony which, independently of that given by Beisswinger, tended in some degree to establish the guilt of the accused.    *State* v. *Lawlor,* 28 Minn. 216, (9 N. W. Rep. 698.)    An "accomplice" is properly defined to be one who is in some way concerned or associated in the commission of the crime; a partaker of the guilt; one who aids or assists, or is an accessory.    4 Bl. Comm. 331; 1 Phil. Ev. 28.    The act made criminal is the taking of money with the specified corrupt motive, and, to be an accomplice, Beisswinger must have participated in the taking.    While in other parts of the Penal Code those who give and those who accept bribes are treated alike,

both being declared offenders, and similarily punished, the Code is significantly silent as to those who give the money, the receiving of which is forbidden by section 112. The witness had perpetrated no crime. He therefore could not have been an accomplice, and his testimony needed no corroboration, if otherwise satisfactory to the jury. The reasoning found in the opinion in *State* v. *Baden,* 37 Minn. 212, (34 N. W. Rep. 24,) upon the same alleged error, is applicable and remarkably pertinent to this appeal. See, also, *State* v. *Owens,* 22 Minn. 238.

The second point presented, that of a fatal variance in two particulars, seems to have been overlooked upon the trial. We find no allusion to it in the record. To comprehend its force, it is only necessary to examine the testimony upon which defendants were convicted, all of which is before us, in connection with the averments of the indictment as to the crime, evidence of which, it is stated, the defendants unlawfully and corruptly agreed to withhold. The only testimony bearing upon the sale of intoxicating liquors of any kind, or to any person, or relating to the primary offence in the indictment particularized upon the trial we are now reviewing, is that the witness Beisswinger and one William Bungard had sold (not having a license therefor) one glass of beer to N. H. King. Beisswinger was commonly known as Christ Snyder, and as to his name there may not have been a fatal variance. *Com.* v. *Desmarteau,* 16 Gray, 1; *McBeth* v. *State,* 50 Miss. 81; *State* v. *Bundy,* 64 Me. 507. But we think it would be impossible to sustain upon principle, and there are no authorities in that direction, a conviction upon an indictment in which the original crime is alleged to have been committed by Fred Vongard, by proof that another person (William Bungard) was accused of, or had perpetrated, the offence. It is not a case of *idem sonans,* and there is no evidence whatever to indicate that William was known by another name.

It will now be observed that, in the part of this indictment which was intended to correspond with the accusing part of an indictment against Snyder and Bungard, the charge is " selling liquor," etc., which is no offence. " Liquor," according to Webster, may be any liquid or fluid substance. The sale prohibited by statute (Laws 1887,

*c.* 6, § 4) is that of spirituous, vinous, fermented, or malt liquors. The descriptive part of the indictment, and which in our judgment must control and by which the prosecution ought to be bound, states the sale of *spirituous* liquors,—one glass of whisky. In *State* v. *Heck*, 23 Minn. 549, under the general rule of pleading a statutory misdemeanor therein enunciated, it was held that upon the charge of furnishing to an habitual drunkard "one glass of spirituous liquors, to wit, whisky," it was not necessary nor essential to prove the article furnished to have been whisky. Undoubtedly, in that case, the proof was ample that some kind of *spirituous* liquors had been furnished. In *State* v. *McGinnis*, 30 Minn. 52, (14 N. W. Rep. 258,) (a sale to an habitual drunkard,) the court held that it was sufficient to allege and prove a sale of "intoxicating liquors," and not necessary to allege or prove either name, or kind, whether whisky or gin or wine or beer, or whether spirituous or vinous or fermented or malt liquors. In this case Snyder and Bungard were not mentioned in the indictment as having sold " intoxicating liquors," while upon the trial the undisputed proof was that they had sold beer, which is a fermented liquid, made from malted grain, and has different names, such as " ale," " porter," " brown stout," " lager," and " small beer," according to its strength and other qualities. It is not a spirituous liquor. *Walker* v. *Prescott*, 44 N. H. 511; *Briffitt* v. *State*, 58 Wis. 39, (16 N. W. Rep. 39.) Under a statute of New York requiring license for the sale of " strong or spirituous" liquors, it was conceded that ale, porter, and strong beer were not spirituous; but, after much contention, it was held in *Nevin* v. *Ladue*, 3 Denio, 437, that they were included in the term " strong liquors." The presentation of this case caused the learned Chancellor Walworth to prepare one of the most complete and exhaustive essays ever written upon the history and properties of malt liquors. The state having charged, in its pleading, the prohibited agreement to have been to withhold evidence of the unlawful sale of that kind of intoxicating liquors designated as " spirituous," (which is an inflammable liquid, produced by distillation,) having, possibly, been unnecessarily particular in details, we are of the opinion that the proof should have corresponded with the allegation in this respect also, and have established a bargain in

reference to evidence of the offence of selling malt or fermented liq-
uors without a license, instead of spirituous.   It is impossible to see
how any of the objects for which certainty in criminal pleadings is re-
quired are attained, or the material and important benefits thereof
secured to a defendant, by a statement in respect to the particular
kind of liquor sold so far from the truth.   A different offence is speci-
fied, the accused may be greatly misled in preparing for trial, and a
verdict would be of no protective value in case the defendant should
be indicted for the offence proved on the trial.

The order appealed from is reversed, and the cause remanded for
a new trial.