[No. 10,971. Department One. — August 27, 1884.]

## THE PEOPLE, RESPONDENT, *v.* EDWARD MOAN, APPELLANT.

CRIMINAL LAW — EVIDENCE — EXPERT TESTIMONY. — The opinion of a witness as to the meaning of an expression used by another person in a conversation between them, is not admissible in evidence. It is for the jury to determine the meaning from the relation of the parties, the language employed, and all the surrounding circumstances.

ID. — HOMICIDE — HABITS OF DECEASED — EXCESSIVE INTOXICATION. — In a prosecution for homicide, it is not error for the court to deny the defendant permission to show that the deceased was in the habit of using intoxicating liquors to excess.

ID. — REPUTATION OF DEFENDANT. — The refusal of the court to allow a witness to answer a question as to the defendant's general reputation for peace and quiet is not error if the witness has never heard such reputation discussed, or if the good reputation of the defendant has already been established by a great number of other witnesses, and no evidence offered by the prosecution to impeach it.

ID. — RECALLING WITNESS — ABUSE OF DISCRETION. — The court refused to permit the defendant to recall a witness who had already been on the stand twice. After considering the circumstances, *held*, that there was not such an abuse of discretion as warranted a reversal.

ID. — HYPOTHETICAL QUESTION — APPEAL. — Where no objection is made to a hypothetical question in the trial court, it cannot be made on appeal.

ID. — ACCELERATION OF DEATH. — A defendant is criminally liable for a homicide committed by violence, if it be shown that his act accelerated the death of the person killed, although it may appear that his death would necessarily have soon occurred as the result of an incurable disease.

APPEAL from a judgment of the Superior Court of Alameda County, and from an order refusing a new trial.

The facts are stated in the opinion of the court.

*E. M. Gibson,* and *W. Whitmore,* for Appellant.

*Attorney-General Marshall,* for Respondent.

MORRISON, C. J. — The defendant was convicted in the Superior Court of the crime of manslaughter, and was adjudged to serve one year's imprisonment therefor. On this appeal numerous errors are assigned, which we will dispose of in the order of their presentation.

1. The first error assigned is to the ruling of the court in refusing to allow a question asked a witness by defendant, and appears on page 42 of the transcript. The witness had stated that one Thomas had told him (witness) to go and get the wood, and he would stand the consequences. Witness was asked what

Thomas meant by the expression that "he would stand the consequences." If the inquiry had any bearing on the case, and we do not see how it had, the objection to the question was properly sustained. It was not a matter for expert testimony, and the opinion of the witness as to what was meant was inadmissible. It was for the jury to determine what Thomas meant, and the meaning was to be gathered from the relation of the parties, the language employed, and all the surrounding circumstances.

2. The second point is found on page 48 of the transcript. A witness was asked, "did you see Mrs. Finck raise part of buck or buck-saw to strike Moan?" The court, in ruling on the objection to the question, remarked that it "did not see what figure it could cut in the case;" and we too fail to see, under the circumstances appearing in the case, what bearing the inquiry had on the question of guilt or innocence of the defendant. If Mrs. Finck had raised the buck-saw to strike Moan, such action on her part would not have had any bearing on the question of Moan's guilt.

3. The third point is equally immaterial. A witness was asked, "what is your opinion as to Finck's mental sanity that afternoon?" The question of Finck's sanity on Saturday afternoon had so little if any bearing on the case, that the ruling of the court on the question does not, in our opinion, merit serious consideration.

4. The fourth objection involves the correctness of the ruling of the court on the following question:—

Defendant asked the witness Dicker, "is it not a fact that during the two years that you were acquainted with Finck, that he was in the habit of using intoxicating liquors to excess?" The prosecution objected to the question and the objection was sustained. Defendant assigns the ruling as error. There are two answers to the objection: In the first place it is wholly immaterial what Finck's habits were, as the law makes it as criminal to take the life of a drunkard as a sober man; and in the second place, if in any point of view the inquiry could have any bearing on the case, Finck's habits were fully established by the uncontradicted evidence of numerous witnesses, as well as by the autopsy in the case. Defendant could not, on any

reasonable hypothesis, have sustained injury by an erroneous ruling of the court on the question.

5. The next point is found on page 68 of the transcript.  One White was on the stand and was asked the following question: "I will ask you if you know what the defendant's general reputation was in the community in which he resided, for peace and quiet?"  The ruling of the court sustaining an objection to the question is assigned as error; but there are two answers to the point.  In the first place, the witness had already stated that he had never heard the defendant's reputation for peace and quiet discussed, and secondly, the defendant's good reputation was fully established by the testimony of a *great many* witnesses, and the prosecution offered no evidence to impeach it.

6. We now reach a more formidable objection to the proceedings, and one which on first impression seemed fatal.  One Victor De Parys was examined as a witness, and before he was dismissed the following colloquy occurred between the court and counsel in the case : —

"The Court.  Are there any further questions of this witness?

"Counsel for defendant replied, 'we are consulting.'

"The Court.  I am going down to Department Three to do a little business, and you can consult meantime.

"The judge retired from the room a few minutes, and on his return said :—

"The Court.  Are there any more questions of this witness? (No answer.)  This question was spoken in the usual audible tone of voice of the judge.  [At this time Mr. Brearty, one of counsel for defendant was sitting at a table about fifteen feet distant from the judge, who was upon the bench, and the other counsel, Mr. Gibson, was standing by the clerk's desk, about nine feet distant from the judge, talking with a person.]

"The Court.  Mr. De Parys leave the stand.  The witness arose and was leaving the witness-stand when Mr. Gibson said :

"Mr. Gibson.  We desire to ask the witness a few more questions.

"The Court.  I don't know that I will allow him to be recalled at all.

"To which ruling of the court defendant duly excepted and assigns the same as error."

Afterwards, the following transpired in this connection:—

"Mr. Brearty. Did I understand the court to rule that we cannot recall the witness De Parys?

"The Court. When I left the court-room to go down into Department Three, you were asked if you had any more questions to put to him; you said you were consulting. I went down to Department Three on some business, and when I returned Mr. De Parys sat on the stand. I asked you and your associate counsel if you had any more questions to put to this witness.

"Mr. Brearty. I declare I didn't hear it.

"The Court. You declined to reply. I then said, 'Mr. De Parys, leave the stand.' I decline to allow you to recall him.

"Mr. Gibson. I will say to your honor, in explanation for myself, that at that instant there was a witness here who was urgent to leave, and insisted on talking.

"The Court. The court proposes to run its business according to the demands of the occasion, and somebody else must give way; that is all. I don't propose to wait upon the opportunity of counsel, and the inclination of counsel, or the inclination of somebody else on the outside. We have to do business here and it has to be done, that is all.

"Mr. Gibson. We would like to ask him another question or two; it will only take a minute or two.

"The Court. Well, it is not the first time during the trial of this case that I have spoken to counsel on your side without reply, and I don't propose to be treated in that way any longer. Now, then, go on.

"To which ruling of the court, in not permitting the witness De Parys to be recalled, defendant duly excepted, and here now assigns the same as error."

We think it would have been the better practice to permit the recall of the witness De Parys, but cannot say that there was such an abuse of discretion on the part of the court as would justify a reversal. The witness had been on the stand twice, once for the people and then for the defense, and if a further examination was demanded by the defense, it was at least proper for the counsel to show to the court what he expected to prove further by the witness, and to show some good reason why he

had not proved it before. The judge evidently thought the court had been trifled with, and perhaps there was some reason for the action of the judge on the occasion.

In speaking upon a similar question, the court in the case of *People* v. *Keith,* 50 Cal. 140, says: " But necessarily such matters must rest greatly in the discretion of the court below ; and it is not our practice to interfere in such cases, except where there has been clearly an abuse of discretion."

Considering all the circumstances surrounding the action of the court in the case, we are not prepared to say that the record exhibits such an abuse of discretion as calls for a reversal of the judgment.

7. The seventh ground of alleged error is that the court allowed a hypothetical question which was not founded on the evidence, inasmuch as the evidence did not show that the defendant weighed two hundred pounds. It is true that there is no evidence relating to the size of the defendant, but no objection to the question was made on the ground that it assumed that defendant weighed two hundred pounds; and we think it too late to make it on appeal. (See transcript, p. 91.)

8. We think the eighth objection untenable, but it is unnecessary to enlarge upon it. If the hypothetical question did not embrace all the facts, it was a very simple matter to frame one that did.

9. The ninth raises a question of the insufficiency of the evidence to justify the verdict. There is no doubt that the defendant struck the deceased at least one, and perhaps two blows on the head. This was on Thursday. The deceased was taken in a dazed and bloody condition to the physician, by whom he was treated, and on the following Tuesday he died. The claim on the part of the defendant is, that it was not the injury, but chronic alcoholism that caused the death. There was some conflict in the evidence on this point; that the organs of the deceased, including brain, stomach, kidneys, and liver, were in a very unhealthy condition, clearly appears from the evidence; but that the immediate cause of death was the blow or blows, is abundantly established. It was the province of the jury, under the instructions of the court, to say whether the death of Finck resulted from violence or natural causes, and we cannot say that

the evidence preponderated on the latter side, rather than the other. It is sufficient for us to see that there was evidence in the case to support the verdict of the jury, and this we think there was.

A question is made on that portion of the charge to the jury instructing them that if the blows accelerated the death of Finck, defendant was responsible. Such we understand to be the law of homicide. If a patient is lying in the last stages of consumption, with a tenure upon life that cannot possibly continue for a day, it is homicide to administer a poison to him by which his life is ended almost immediately. So in the case we are now considering, if Finck, by excessive indulgence in alcoholic drinks had reduced himself to a wreck and brought his life to the verge of the grave, it was a wrongful act for the defendant to accelerate his death by violence. Perhaps blows delivered with equal force on the head of a strong man in the enjoyment of robust health, would not have been attended by any serious consequences; but upon a life impaired as Finck's was, by self-abuse, they may have accelerated his death; and but for the blows the man would not have died, at least not at the time he did. This makes the defendant criminally responsible. (Wharton Homicide, pp. 241, 242, 243.) In the case of State v. Morea, 2 Ala. 275, the court says: "If the death was accelerated by the violence of the prisoner, his guilt is not extenuated, although death might be, and probably would have been, the result of the disease which then afflicted the deceased." (See also Wharton Am. Cr. Law, § 941.)

The right of the district attorney to file the information, and the sufficiency of it, were passed upon by Department One of this court when defendant was brought before it on habeas corpus. We approve of what was then said, and it is unnecessary to examine here the questions then considered. (Ante, p. 216.)

The instructions in the case appear to have been given with a good deal of care, and we find nothing in them upon which error can be predicated. The motion for a new trial was properly denied. There is nothing in the record demanding a reversal of the judgment, and the same, as well as the orders of the court, are affirmed.

Ross, J., McKinstry, J., and Sharpstein, J., concurred.