STATE v. THOMAS WHITMAN and Others.[1]

January 10, 1908.

Nos. 15,362—(22).

**Larceny—Accessory before the Fact—Variance.**

The defendant was convicted of the crime of larceny. The indictment directly charged him with having stolen a quantity of sugar from a certain building, both being the property of and in the possession of the person named in the indictment. The proof was that he was not physically present when the sugar was stolen, but that he procured his accomplices, who were witnesses for the state, to steal it, and, further, that the person named as owner was in possession of the building and had possession of the sugar therein as bailee, but the general ownership of the property was in other parties. *Held:*

1. One who at common law would be an accessory before the fact may, by virtue of R. L. 1905, § 4758, be charged directly with the commission of the felony as principal, and on his trial evidence may be received to show that he procured the crime to be committed, and, further, that the admission of such evidence is neither a variance nor a violation of section 6, art. 1, of the state constitution, providing that in criminal prosecutions the accused shall be informed of the nature and cause of the accusation against him.

2. There was no material variance between the proof and allegations of the indictment as to the ownership of the sugar and building from which it was stolen.

3. There was sufficient corroboration of the accomplices to sustain the conviction of the defendant.

4. There were no reversible errors in the rulings of the trial court as to the admission of evidence, nor did it err in refusing to instruct the jury as to a matter which there was no evidence tending to prove.

Appeal by defendant Thomas Whitman from a judgment of the district court of Hennepin county convicting him of the crime of grand larceny in the second degree, and from an order, Dickinson, J., denying his motion for a new trial. Affirmed.

*Mead & Robertson,* for appellant.

*Edward T. Young,* Attorney General, *Chas. S. Jelley,* Assistant Attorney General, and *Al J. Smith,* County Attorney, for the state.

[1] Reported in 114 N. W. 363.

START, C. J.

The defendant was convicted in the district court of the county of Hennepin of the crime of grand larceny in the second degree. He appealed from the judgment and from an order denying his motion for a new trial. The indictment, which was upon its face sufficient in form and substance, charged the defendant, as a principal, with the crime of grand larceny in the second degree. The evidence showed that he was not physically present when the larceny was consummated, but it did show beyond any reasonable doubt that he procured his codefendants to commit the crime and aided and advised them in the commission thereof.

While the indictment is sufficient, and on its face it advised the defendant that he was charged with having committed the crime directly as principal, yet the proof was that he procured his codefendants to commit the crime. Therefore the defendant's counsel contends that he was not "informed of the nature and cause of the accusation" against him, as required by section 6 of article 1 of the constitution of the state.

At common law a distinction was made between an accessory before the fact and a principal. The accessory could not be charged as a principal. This distinction was technical, for what one does by another he does by himself. The common-law rule has been expressly abolished by our Penal Code (R. L. 1905, § 4758), which reads as follows: "Every person concerned in the commission of a crime, whether he directly commits the act constituting the offense, or aids and abets in its commission, and whether present or absent, and every person who directly or indirectly counsels, encourages, hires, commands, induces, or otherwise procures another to commit a crime, is a principal, and shall be indicted and punished as such." This statute has been construed by this court, and the rule is that one who at common law would be an accessory before the fact may be charged directly in the indictment with the commission of the offense, and on his trial evidence may be received to show that he procured the crime to be committed, or he may be charged as principal by setting out facts which at common law would constitute him such accessory. State v. Beebe, 17 Minn. 218 (241); State v. Briggs, 84 Minn. 357, 87 N. W. 779. This rule is in harmony with the decisions of nearly

all of the courts of other states having a similar statute. 1 Am. & Eng. Enc. (2d Ed.) 263; 22 Cyc. 361.

It is, however, urged that in the adjudged cases supporting the rule no reference is made to the claim that an indictment charging one who at common law would be an accessory before the fact as a principal does not inform the accused of the nature and cause of the accusation against him. This is true as to many, but not all, of the cases. We cannot assume that the point escaped the attention of the court in the cases referred to. Conceding, however, for the purposes of the argument, that it did, we are of the opinion that, where the distinction between accessories before the fact and principals has been abolished, an indictment so framed does inform the accused of the nature and cause of the accusation against him, within the meaning of the constitution. Every person who procures property to be stolen, in fact and in law, by virtue of the statute, steals it himself, and when the indictment charges him with stealing the property, describing it, setting forth time and place, and alleging ownership and value, it informs him of the nature and cause of the accusation against him. It is not necessary to allege matters of evidence in an indictment, for it is only necessary to allege ultimate facts.

In the case of People v. Bliven, 112 N. Y. 79, 82, 19 N. E. 638, 8 Am. St. 701, this question was ably discussed. In that case the defendant, as here, was charged by the indictment as a principal. The proof showed that he was not present when the crime was committed, but that he procured it to be committed. The question was raised that a conviction could not be sustained upon such an indictment and such proof. The court held the indictment and the evidence sufficient. The Bill of Rights in the constitution of the state of New York does not, as we understand the matter, contain a provision similar to the one in our Bill of Rights, to which reference has been made. The case cited, however, is here in point; for the question was whether the defendant could be misled as to the nature and character of the act of which he was accused, and was he properly informed thereof by the indictment? As to this question, Mr. Justice Peckham, speaking for the court, said: "The tendency of modern thought, as exhibited in criminal legislation, is to free the

practice from mere technicalities, and to bring to the trial of the indictment the very merits of the issue between the people and the defendant, and in the plainest and least formal style. The only objection that could be urged against an indictment in this form is the possibility of misleading the defendant as to the nature or character of the act of which he is accused. It was that objection that seemed so weighty in the eyes of that most learned and able judge, Chief Justice Marshall, as we learn from his views expressed upon that point in the trial of Aaron Burr for treason, although at the same time he admitted the existence of the rule. 4 Cranch, 469, 497. But upon reflection we think the objection is more fanciful than real, and if it be understood that upon an indictment of this nature a man may be convicted upon proof not only of his doing the act with his own hand, but upon proof that he advised and procured another to do it, and thus did it himself, we think no man will suffer any real inconvenience or any injustice from such a rule."

In the case of State v. Gifford, 19 Wash. 464, 53 Pac. 709, a contrary conclusion was reached, and the court held, construing a constitutional provision and a statute similar to our own, that an indictment against one who was not personally present when a felony was committed, but who procured it to be committed, should allege acts showing that he procured the crime to be committed. We, however, hold, in accordance with the logic of our own decisions construing R. L. 1905, § 4758, that one who at common law would be an accessory before the fact may be charged directly by the indictment with the commission of the felony as principal, and on his trial evidence may be received to show that he procured the crime to be committed, and, further, that the reception of such evidence is neither a variance nor a violation of section 6, art. 1, of our constitution, providing that in criminal cases the accused shall be informed of the nature and cause of the accusation against him.

2. It is also urged by the defendant that there was a fatal variance between the allegations of the indictment, as to the ownership of the property and the building from which it was stolen, and the proof. The indictment alleged that the defendants did feloniously take, steal, and carry away from that certain "building known, designated, and described as Nos. 18, 20, and 22 Hennepin avenue, in said city

of Minneapolis, county and state aforesaid, one thousand pounds of sugar, of the value of fifty dollars, a more particular description of said property being to the grand jury unknown, said building and property therein contained described as aforesaid, being then and there the property of, in the lawful possession of, and belonging to Willard W. Morse." The evidence showed that the party named in the indictment was in the storage and warehouse business at the numbers stated in the indictment, and had actual possession of the basement and first and second floors of the building at the time named in the indictment, although his lease therefor had expired, and, further, that he then had the sugar in question in his possession as warehouseman or bailee. The general ownership of the building and the sugar was in other parties. This did not constitute a variance. R. L. 1905, § 5321.

3. Two of the appellant's codefendants and alleged accomplices were called as witnesses for the state, and gave testimony which, if credible, conclusively established his guilt. There was no denial of the testimony, and appellant urges that there was no sufficient corroboration of their testimony. If this be true, the verdict cannot stand. The rule as to corroboration of accomplices is that the corroborating evidence is sufficient if, independently of the testimony of the accomplice, it tends in some degree to establish the guilt of the accused; but it need not be sufficiently weighty, standing alone, to make out a prima facie case. State v. Lawlor, 28 Minn. 216, 9 N. W. 698. The corroborating evidence was sufficient within the rule stated.

4. The assistant county attorney examined one of the accomplices as to an alleged conversation with the appellant in reference to stealing sugar, which was objected to by his counsel as tending to prove an independent offense. The trial court ruled, in effect, that if the conversation related to the larceny of sugar alleged in the indictment, or the statements were made to induce the witness to commit the crime charged, the evidence was competent; otherwise, not. The court, having asked some preliminary questions relative to the competency of the testimony, struck out on its own motion, the defendant excepting, all the testimony, and then and there instructed the jury to disregard it. The assistant county attorney then called another

witness, who testified as follows: "Edwards spoke to me about stealing the sugar four days before it was stolen. Q. Had you before the 12th of February [the date of the larceny alleged in the indictment] assisted Edwards in stealing sugar from the warehouse? A. Yes, sir. Mr. Mead: Now, wait a moment. I move that that be stricken out. The Court: Strike it out. (Defendant objected to the question as incompetent; objection sustained.)" Counsel for appellant assigns this as error, on the ground that it was the admission of evidence tending to establish the commission of another and independent crime by evidence put in before counsel could object, and that it was done for the purpose of evading the ruling of the court. If such were the purpose of the prosecuting. attorney, his conduct would merit grave censure; but we must assume that such was not the case, in view of the fact that misconduct of counsel was not one of the grounds of the motion for a new trial. The question in this connection for our decision is whether the rulings of the court constitute reversible error. We hold that they were not; for, as soon as it was developed that the evidence related to an independent crime, the court ruled that it was incompetent, struck it out, and directed the jury to disregard it. It is true that the court did not repeat the direction when the answer to the last question was stricken out; but the order striking out the answer followed so closely in point of time the direction already given that it would seem that there was no necessity to repeat the direction. It is to be noted that the action of the court was completely responsive to counsel's motion to strike out the evidence.

5. The last alleged error urged in the brief of counsel is that the court erred in refusing to instruct the jury to the effect that if they believed from the evidence that the accomplices, who testified for the state, were induced to become such witnesses by any promise or hope of immunity held out to them, such fact should be taken into consideration in determining their credibility. The instruction was rightly refused, for there was no evidence of such promise.

Judgment and order affirmed.