SAM SLOTNICK *v.* CYRUS E. COOLEY.

(*Nashville,* December Term, 1932.)

Opinion filed June 24, 1933.

W. B. ROSENFIELD, for plaintiff in error.

EDGAR WEBSTER, for defendant in error.

MR. JUSTICE MCKINNEY delivered the opinion of the Court.

This is an action to recover damages for personal injuries. The trial court sustained a demurrer to the dec-

laration, the purport of which is that no cause of action is stated in the declaration, and dismissed the suit. We quote the declaration as follows:

"On or about the 14th day of May, 1932, prior and subsequent thereto, the defendant, Cyrus E. Cooley, operated a golf course in the City of Memphis, upon certain real estate situated south of Poplar Street and near the Aulan Viaduct; he invited the general public to play upon said golf course upon the payment of a green's fee or charge for the privilege. Plaintiff, on May 14, 1932, and upon many occasions prior thereto was a patron of the defendant and played golf upon said golf course in accordance with the rules and regulations promulgated by defendant and in accordance with the ethics and proprieties of the game.

"On or about the 14th day of May, 1932, while the plaintiff was playing golf and while he was standing in the fairway on the —— hole about 125 yards from the tee, he was struck in the right eye by a golf ball driven by one Mattice, seriously injuring him as is hereinafter set forth.

"Plaintiff further avers that he was standing in full view of the tee from which the golf ball was driven and that said Mattice drove said golf ball pursuant to the direction and instruction of the defendant's agent and servant who was then and there acting about the defendant's business and within the scope of his employment. The Alicia Golf Course is quite a popular course and is well patronized and in order to speed up playing upon the course and to reap the financial benefits from playing the course by a large number of patrons, defendant, Cyrus E. Cooley, employed a starter who went from place to place upon the course to direct players when to start.

Said starter on May 14, 1932, was negligent and careless in directing one said Mattice to drive from the tee when plaintiff was within striking distance thereof and within full view and in a position where he was likely to be struck. Plaintiff avers that the ethics and proprieties of the game of golf require that he be beyond driving distance of the tee before others be directed to drive their golf balls.

"Plaintiff avers that it was the duty of the defendant, Cyrus E. Cooley, to operate his golf course in such manner as not to endanger plaintiff and others properly playing upon said course, and that he was negligent in failing to require players upon the course to wait to drive from the tee until plaintiff and his party had progressed a safe distance from the tee; that it was the duty of the defendant, Cyrus E. Cooley, to require those playing upon the course to exercise reasonable and ordinary care to prevent injuries to other players such as that sustained by plaintiff and that as a result of the negligence of the defendant, Cyrus E. Cooley, as herein alleged, plaintiff was seriously, painfully and permanently injured."

The principal ground of defense relied upon is that the driving of the golf ball by Mattice was the proximate cause of the injury, rather than the negligent act of the starter in directing his action. To this we are unable to agree. This is not a case of an independent intervening cause. Mattice was obeying the instruction of the starter and, in driving the ball, his act became that of the starter. If A directs B to shoot C, and he does so, A cannot escape responsibility for the act by saying that the proximate cause of the injury was the shot fired by B. In 45 Corpus Juris, 926-928, it is said:

"It is well settled that the mere fact that other causes, conditions, or agencies have intervened between defendant's negligence and the injury for which recovery is sought is not sufficient in law to relieve defendant from liability. In other words, an intervening cause will not relieve from liability where the prior negligence was the efficient cause of the injury. The test is not to be found in the number of intervening events or agencies, but in their character and in the natural connection between the wrong done and the injurious consequences, and if the injury is the natural and probable consequence of the original negligent act or omission, and is such as might reasonably have been foreseen as probable, the original wrongdoer is liable, notwithstanding the intervening act or event.

"But an intervening cause will be regarded as the proximate cause, and the first cause as too remote where the chain of events is so broken that they become independent and the result cannot be said to be the natural and probable consequence of the primary cause, or one which ought to have been anticipated."

On the next page it is said: "An intervening efficient cause is a new and independent force which breaks the causal connection between the original wrong and the injury"

In *Grigsby & Co.* v. *Bratton,* 128 Tenn., 597, 603, it is said:

"What is meant by 'proximate cause' is not necessarily that which is next or last in time or place, but that which is a procuring, efficient, and predominant cause. Closeness in causal relation, rather, is the meaning."

In *Letner* v. *State,* 156 Tenn., 68, 75-76, the facts were

that while three boys were crossing a river in a boat Letner shot into the water near the boat to frighten them. Walter Johnson, who was steering the boat, was so frightened that he jumped into the river, capsizing the boat, and the two boys with him, Alfred and Jesse, were drowned. Letner was indicted and convicted of involuntary manslaughter for causing the death of Alfred. In affirming the judgment this Court, after reviewing a number of authorities, said:

"It is sought to differentiate the foregoing cases from the one here involved upon the theory that the death of deceased was due to an intervening cause, viz.: the capsizing of the boat by the brother of deceased.

"The rule invoked is thus stated in 13 R. C. L., 750:

" 'Where it appears that the act of the accused was not the proximate cause of the death of the person for whose murder he is being prosecuted, but that another cause intervened, with which he was in no way connected, and but for which death would not have occurred, such supervening cause is a good defense to the charge of homicide.'

"But, on page 753, it is said:

" 'Whenever an independent responsible person, disconnected with the defendant, causes some intervening act to be done, the defendant is relieved of responsibility for the consequences thereof, unless the act of intervention is the natural result of the defendant's act.'

"The same exception to the rule is thus stated in 29 C. J., 1078:

" 'The unlawful act or omission need not be the sole cause of the death. Thus if defendant's negligence was a cause of the death, it is immaterial that the negligence of the deceased himself or of others also contributed

thereto. If an injury caused by defendant contributed to the death, defendant is responsible although a subsequent mortal wound inflicted independently by another also contributed thereto. Defendant's act or omission need not be the immediate cause of the death, he is responsible if the direct cause results naturally from his conduct. The same is true if the direct cause is an act of the deceased himself reasonably due to defendant's unlawful conduct.'

"From the foregoing it appears that the defendant is liable even where his act was not the immediate cause of the death, if he was connected with the intervening cause, or if the act of intervention was the natural result of his act.

"In other words, the defendant cannot escape the consequences of his wrongful act by relying upon a supervening cause when such cause naturally resulted from his wrongful act.

"By firing the gun the defendant caused Walter Johnson to take to the water, resulting in the overturn of the boat and the drowning of Alfred."

In the instant case Mattice was not an independent person disconnected with the starter in driving the ball, but was acting under his direction and at his command.

█ We are further of the opinion that the doctrine of assumed risk has no application to the facts of this case. The defendant had prescribed rules and regulations, the enforcement of which the plaintiff had a right to rely upon. Had the agent or servant of defendant followed the rules, and not instructed Mattice to drive his ball until plaintiff had reached a place of safety, the accident never would have occurred. Upon this question the Supreme

Court of North Carolina, in *Everett* v. *Goodwin*, 201 N. E., 734, 161 S. E., 316, 318-319, said:

"The second question propounded involves the duty imposed by law upon the owner of a golf course. Manifestly, it is the duty of the owner to exercise ordinary care in promulgating reasonable rules for the protection of persons who rightfully use the course, and furthermore, to exercise ordinary care in seeing that the rules so promulgated for the protection of players are enforced. The owner of a golf course is not an insurer, nor is such owner liable in damages for mishaps, accidents, and misadventures not due to negligence. In the case at bar, the evidence tends to show that the owner of the course had promulgated certain rules designed to protect players, and, in an effort to see that such rules were enforced, it had employed rangers who were charged with the duty of supervising the course, and enforcing the rules and regulations prescribed by the owner. There is evidence that the rules so prescribed were openly violated, and that the defendant owner, through its agents and employes, made no effort to caution offending players or otherwise to discharge the duties imposed by law. Therefore, the liability of the owner was properly submitted to the jury, and the judgment based upon the verdict must be upheld."

Without further discussion, we have concluded that the declaration is sufficient to entitle the plaintiff to a hearing upon the merits.

It follows that the judgment of the trial court will be reversed, and the case remanded for further proceedings.