## STATE v. JACOB JOSEPH SMITH.

119 N. W. (2d) 838.

December 21, 1962—No. 38,038.

*Jerome M. Daly,* for appellant.

*Walter F. Mondale,* Attorney General, *Charles E. Houston,* Solicitor General, *William B. Randall,* County Attorney, and *John P. Frank,* Assistant County Attorney, for respondent.

NELSON, JUSTICE.

The grand jury of Ramsey County returned an indictment charging defendant, Jacob Joseph Smith, and Richard Robert Mitchell and

Richard Thomas McCarty with having committed the crime of murder in the third degree contrary to Minn. St. 619.10.[1] The indictment alleged that the act took place on August 12, 1959, and that the victim, Gordon Knopic, died on August 16, the result of an attempt to commit robbery in the first degree.

Defendant was tried separately and a jury verdict of guilty was returned. Thereafter he moved that the verdict be set aside and the indictment dismissed or a new trial be granted. He appeals from an order denying that motion.

The settled case consists of a synopsis of the testimony of 42 witnesses and a verbatim transcript of the testimony of McCarty and of the medical witnesses, which reveal the following facts: On the evening of August 11, 1959, defendant together with Mitchell, McCarty, and one Lawrence Liebgott happened to meet in Duane's Lounge, a tavern in St. Paul. McCarty at the time was looking for one Richard Stone who owed him $4. Since Stone was not there, Liebgott suggested that they go to another bar where they might find him. The four men then went to Triviski's Bar where they stayed a short time. About 11 o'clock they arrived at Harry Unise's bar on Rice Street near University Avenue. Upon entering, they took places at the bar. Gordon Knopic, dressed in green, uniform-type clothing, was at the bar. McCarty testified that Liebgott went to the far end of the bar to talk with an acquaintance and Mitchell stood at the bar near Knopic. McCarty testified that Mitchell, having seen Knopic cash a check, said that he "was going to get him." Mitchell left the bar, and about a half hour later, Knopic left, followed by defendant. McCarty testified that he finished his drink, which took 3 or 4 minutes, and left the bar with the intention of going home.

---

[1] Section 619.10 defines murder in the third degree as follows: "Such killing of a human being, when perpetrated by act eminently dangerous to others, and evincing a depraved mind, regardless of human life, although without a premeditated design to effect the death of any individual, or without a design to effect death, by a person engaged in the commission of, or in an attempt to commit, any felony, except rape, assault with an attempt to commit rape, indecent assault, or sodomy, either upon or affecting the person killed or otherwise, is murder in the third degree * * *."

McCarty stated that upon reaching the street he looked to his right and saw Smith running around the corner of the Johnson liquor store, which is about one-half block north of the Unise bar; that he ran after Smith to see what was happening; and that upon reaching the corner of the liquor store he saw Smith pulling a man out of the only car in the parking lot adjacent to the liquor store. The testimony shows that that man was Gordon Knopic and that the automobile was his. McCarty then testified:

"* * * The man Smith was pulling out of the car was dressed in green; Smith opened the door and pulled him out of the car and hit him and knocked him down; I think he hit the man in the head. The guy in the green pants I think opened the door first, and Smith pulled him out; the man was just getting into the car; from where I was standing I could not hear anything being said by either one of them. I think Smith only hit the man twice. I walked up behind Smith to see what he was going to do. I was going to try to stop him, and then Mitchell came running across the street * * * and into the parking lot; * * * without saying anything to anyone, Mitchell kicked the fellow in the head * * * Mitchell was running on a dead run and he kicked him on the run just like you would kick a football. * * * I did not touch the man at all. I hollered at him to leave him alone, and I hollered at Mitchell—he kicked him a couple of times, and I said, 'For God's sake, you're going to kill the guy.'"

A woman living in an apartment nearby saw the scuffle and began screaming for the police. Six occupants of a car being driven past the parking lot also saw the attack take place and stopped to assist Knopic. McCarty testified that defendant, Mitchell, and he then ran from the scene and reentered the Unise bar through the back door. When they entered the bar, Liebgott was there. McCarty stated that Liebgott then asked defendant if "he got any money off of that guy." Both defendant and Mitchell said that they had not. McCarty stated that Liebgott then threatened him that "if I said anything he'd get me for it."

In the meantime the police had been called and upon their arrival found Knopic sitting on the curb, to which he had been helped by some of the witnesses of the attack. His face was badly beaten, and he

was bleeding profusely from the nose and mouth. He was taken by ambulance to Ancker Hospital, where he died on August 16, 1959.

Upon initial examination it was impossible to determine the extent of Knopic's injuries because of the extremely swollen condition of his face, his eyes being so swollen that they could not be opened at all. Blood transfusions were given and X rays taken which indicated a fractured nose; a fracture of the right jaw; a fracture of the left infraorbital ridge, which is a fracture of the bone immediately below the right eye; and rib fractures on the right side of the chest.

Dr. John Brainard, a surgery resident at Ancker Hospital, saw Knopic and testified that he was disoriented and confused, indicating something amiss in his central nervous system which Dr. Brainard suggested might be delirium tremens. In explanation, he stated:

"* * * Delirium tremens is a mental state of confusion and disorientation with hallucinations and gross tremor of the extremities. It is usually associated with alcoholic poisoning. Delirium tremens is not the result of only alcoholism and can be caused by other things, but it is usually caused by alcoholism."

Dr. Brainard also stated that delirium tremens may result from cirrhosis of the liver, from arteriosclerosis, or from an acute inflammation of the brain.

Dr. William D. Smith, an intern at the hospital, testified that Knopic had fallen out of bed at approximately 11:30 on the night of August 14 and that the witness then conducted a routine neurological examination and determined that Knopic had sustained no further injuries as a result of this fall.

Dr. Frank W. Van De Water testified that he had Knopic under his care during his confinement in the hospital. On the death certificate, which he signed, the immediate cause of death is diagnosed as delirium tremens brought on by chronic alcoholism. "Cirrhosis of the liver; Head trauma including fractured maxilla, mandible, nasal bones; Chest trauma, fractured ribs 6, 7, 8 right" were also listed as other significant conditions contributing to death but not related to the immediate cause.

1-2.   Defendant contends that the trial court erred in failing to

grant his motion for dismissal at the close of the testimony on the ground that the evidence was not sufficient to support a conviction beyond a reasonable doubt. He claims that McCarty was an accomplice and that his testimony and a statement given by him to the police, which was admitted into evidence, constituted a "confession" which lacked the corroboration required by Minn. St. 634.04. That statute provides:

"A conviction cannot be had upon the testimony of an accomplice, unless it is corroborated by such other evidence as tends to convict the defendant of the commission of the offense, and the corroboration is not sufficient if it merely shows the commission of the offense or the circumstances thereof."

What corroborative evidence is required was recently stated in State v. Armstrong, 257 Minn. 295, 307, 101 N. W. (2d) 398, 406, as follows:

"The reasons for requiring the testimony of an accomplice to be bolstered by corroborating testimony have been stated by this court in State v. Smith, 144 Minn. 348, 175 N. W. 689, and State v. Jackson, 198 Minn. 111, 268 N. W. 924. The rule since the enactment of the statute is, however, that it does not require a case to be made out against a person accused of a crime sufficient for his conviction before the testimony of an accomplice can be considered, but the corroborating evidence must, independent of the testimony of the accomplice, tend in some degree to establish the guilt of the accused but need not be sufficiently weighty standing alone to justify a conviction. State v. Korsch, 168 Minn. 354, 210 N. W. 10; State v. Baker, 161 Minn. 1, 200 N. W. 815; State v. Whitman, 103 Minn. 92, 114 N. W. 363, 14 Ann. Cas. 309; also see, 5 Dunnell, Dig. (3 ed.) § 2457. Evidence relating exclusively to the fact of the commission of the crime and the circumstances thereof, as distinct from defendant's connection therewith, would not be sufficient."

See, State v. Rasmussen, 241 Minn. 310, 313, 63 N. W. (2d) 1, 3; State v. Lawlor, 28 Minn. 216, 9 N. W. 698.

The state takes the position that McCarty was not an accomplice

and that he made no confession either by his written statement or his testimony. It contends also that if he was an accomplice his testimony was sufficiently corroborated.

In 5 Dunnell, Dig. (3 ed.) § 2462, a confession has been defined as follows:

"A confession involves the idea of criminality. It applies only to a direct or implied acknowledgment of guilt, after an offense committed, but does not extend to admissions of fact which in themselves are innocent and involve no criminal intent."

It would be most difficult to interpret either the statement or McCarty's testimony as confessions within the foregoing definition. They contain neither acknowledgments of guilt nor indication of any implication in the crime of which defendant was convicted.

3. Mr. Justice Mitchell, speaking for this court, in State v. Durnam, 73 Minn. 150, 165, 75 N. W. 1127, 1131, defined an accomplice:

"* * * An accomplice, in legal signification, is one who co-operates, aids, or assists another in the commission of a crime, either as principal or accessory. The general test to determine whether a witness is or is not an accomplice is, could he himself have been indicted for the offense either as principal or as accessory? If he could not, then he is not an accomplice."

This definition was later considered and somewhat expanded in State v. Price, 135 Minn. 159, 160 N. W. 677. An issue in that case was whether a witness to a crime had actually aided or assisted in its commission. In its review, this court recognized the test stated in State v. Durnam, *supra,* but qualified that rule as follows (135 Minn. 164, 160 N. W. 679):

"* * * '* * * The general test to determine whether a witness is or is not an accomplice is, could he himself have been indicted for the offense either as principal or as accessory? If he could not, then he is not an accomplice.' The case of Com. v. Wood, 11 Gray, 85, cited by Mr. Justice Mitchell as authority for the statement last quoted, holds that a person who cannot be indicted for the offense charged, is not an accomplice, which is no doubt a correct statement so far as it goes. But

this court has never held that a person who could be indicted, or was under indictment, for the crime in relation to which he testifies *was, as a matter of law, an accomplice*. To make a witness an accomplice, it seems logical that it should appear that a crime has been committed, that the person on trial committed the crime, either as principal or accessory and that the witness co-operated with, aided or assisted the person on trial in the commission of that crime either as principal or accessory." (Italics supplied.)

4. In the early case of State v. Lawlor, 28 Minn. 216, 9 N. W. 698, this court said, "Whether a witness is an accomplice in the commission of the crime for which the defendant is on trial, is a question for the jury and not for the court." Defendant here insists that McCarty was an accomplice, but the record does not conclusively establish this. McCarty upon direct examination by the state was asked where he had been and what he had done on the night the crime was committed. His statement given to the police and his testimony, if true, establish that he did not actively participate either in the planning or the execution of the crime. Nor does his testimony indicate that he had any expectation of sharing in the proceeds of the attempted robbery. Upon cross-examination McCarty explicitly denied any participation in the crime and any collusion with the police or law enforcement authorities in order to secure a conviction of the defendant or any favored treatment for himself.

Defendant offered no testimony concerning McCarty's actions on the evening of the crime. He did not take the stand, and Liebgott and Mitchell refused to testify about the events of the evening on the ground of self-incrimination. Any substantiation of the claim that McCarty had participated in the crime would have to be found in the testimony of the seven witnesses who testified that they had seen, from some distance, three men—rather than two, as McCarty had testified—participating in the assault. Under these circumstances, who participated in the crime was a fact question for the jury's determination under proper instructions from the trial court.

After stating the general test by which to determine whether or not a witness is an accomplice, the trial court charged the jury:

"If you find from the evidence that McCarty was not an accomplice you will disregard the instructions I am about to give you concerning the necessity of corroboration of the testimony of an accomplice. If you find from the evidence that McCarty was an accomplice you will apply the following instructions to the evidence."

The court then read § 634.04 to the jury and explained, consistent with the decisions of this court, the reason for requiring the testimony of an accomplice to be corroborated—to aid in establishing the credibility of the testimony. In summary the court said:

"* * * If McCarty was not an accomplice then his testimony need not be corroborated and his testimony can be considered the same as the testimony of other witnesses. * * * If McCarty was an accomplice you will apply the instructions given to you with respect to the corroboration which is required of his testimony. If McCarty was an accomplice, then you cannot consider his testimony unless it was corroborated."

The only fact proved, when the testimony is viewed as a whole, is that McCarty might have been a participant in the crime rather than standing by, as he testified. His role was correctly submitted to the jury with the instruction that whether McCarty was an accomplice was solely dependent upon the evidence and must be determined in accordance with the court's instructions. These were full and complete, fairly stating the law applicable to the facts and circumstances disclosed by the record.

5. It is a settled rule of evidence that an accomplice, notwithstanding the turpitude of his conduct, is not on that account an incompetent witness; such turpitude only goes to the credibility of his testimony. United States v. Lancaster (S. D. Ga.) 44 F. 896, 10 L. R. A. 333.

6. An accomplice testifying for the state has no legal right, in the absence of statute, to demand clemency or exemption from prosecution. United States v. Ford, 99 U. S. (9 Otto) 594, 25 L. ed. 399; 1 Underhill, Criminal Evidence (5 ed.) § 180; Ingram v. Prescott, 111 Fla. 320, 149 So. 369; Henderson v. State, 135 Fla. 548, 185 So. 625, 120 A. L. R. 742; Annotation, 120 A. L. R. 751.

In People v. Durand, 321 Ill. 526, 152 N. E. 569, two accomplices

gave vital testimony which incriminated plaintiff in error. The character of the testimony indicated that inducements might have been held out to one of the accomplice witnesses as a reward for his assistance to the prosecution. One of the principal grounds urged for reversal of the judgment was that cross-examination of the accomplices was unduly limited. With regard to this contention the Illinois Supreme Court said (321 Ill. 530, 152 N. E. 571):

"Where an accomplice is used as a witness for the prosecution, the widest latitude of cross-examination ought to be permitted. There is always the temptation for an accomplice to testify falsely, and the jury are entitled to know what inducements have been held out to him as a reward for his assistance to the prosecution, and anything else that in any way affects his credibility."

However, the court held that the error was harmless because the testimony of the accomplices was fully corroborated by other facts and circumstances which pointed to the guilt of the plaintiff in error.

7. Defendant contends that the court erred in restricting his examination of Thomas Moore, counsel for McCarty, and of John P. Frank and Stephen L. Maxwell, assistant county attorneys who represented the state, who were called as witnesses by defendant's counsel to elicit evidence that McCarty had received promises of clemency or immunity from prosecution. McCarty denied any such complicity during a cross-examination of the widest latitude. Mr. Moore was asked if he had consulted with anyone in the county attorney's office about the case. An objection to this question, as violative of the attorney-client privilege, was sustained. Defense counsel then asked whether Mr. Moore had ever made a deal with the county attorney to obtain special privileges for McCarty. An objection on the ground of privilege was again sustained. A similar question was asked, whereupon the court warned defendant's attorney not to repeat it. Defendant then called Mr. Frank, who was conducting the prosecution. He testified that he did not know which lawyers in the county attorney's office had direct contact with the case but that a Mr. Maloney had appeared in court when McCarty's bail was reduced. He also stated, "I believe I appeared the first time when Mr. McCarty was arraigned. I did not

walk up to Mr. McCarty and shake his hand and say 'I think that something can be worked out here.' " Nor did questioning of Mr. Maxwell produce testimony supporting defendant's claim that a "deal" had been made with McCarty.

In Freeman v. State, 93 Tex. Cr. 436, 249 S. W. 466, the defendant complained of the refusal of the trial court to compel the state to disclose to the jury what trade or agreement was made with an accomplice who testified at defendant's trial. The court observed (93 Tex. Cr. 438, 249 S. W. 467):

"* * * We know of no authority upholding the contention of appellant in this matter. The court accorded appellant the fullest liberty of inquiry of said witness upon cross-examination, and it does not appear that any effort of his to ascertain the facts desired in this regard was in anywise interfered with or prevented by the court."

However, the defense is entitled to show that an accomplice testifying for the state does so with the expectation of gain or immunity and it is immaterial whether there has been an actual agreement to that effect with the public prosecuting officer. 1 Underhill, Criminal Evidence (5 ed.) § 180.

It does not appear that defendant denies his participation in the crime, and from searching the record it is fair and reasonable to conclude that he did assault and attempt to rob Knopic. Since defendant was accorded the fullest liberty of inquiry on cross-examination of McCarty, we are unable to agree with him under the circumstances that as a matter of right he should have been permitted to compel the attorneys representing the state and McCarty to make disclosure with reference to any promise of clemency or immunity from prosecution without first making an offer of proof or laying a proper foundation for the admission of testimony to that effect, if such was in fact known to and available to defendant. We are unable to agree with the contention of defendant that the trial court committed prejudicial error under the foregoing circumstances. Moreover, a thorough consideration of the charge indicates that it was fair, complete, and made plain the necessity under § 634.04 of corroboration of McCarty's testimony if the jury determined that he was an accomplice.

8. Defendant has assigned as error the trial court's refusal to dismiss the indictment against him on the ground that there was no showing that the injuries inflicted upon Knopic were the proximate cause of his death. Defendant's position is that the medical testimony indicated that Knopic died as the result of delirium tremens due to cirrhosis of the liver and chronic alcoholism. Defendant relies upon State v. Schaub, 231 Minn. 512, 44 N. W. (2d) 61, 62, wherein the court held:

"To sustain a conviction of manslaughter in the second degree, the state must prove beyond a reasonable doubt that defendant's acts were a proximate cause of the victim's death."

The word "proximate" is generally used to designate the legal cause of an injury. 13B Dunnell, Dig. (3 ed.) § 7000. That authority also states:

"* * * Whoever does a wrongful act is answerable for all the consequences that may ensue in the ordinary and natural course of events, though such consequences are immediately and directly brought about by intervening causes, if such intervening causes are set in motion by the original wrongdoer."

A superseding, intervening cause is defined as an act (13B Dunnell, Dig. [3 ed.] § 7005[2] ):

"* * * of plaintiff or of a third person, in no way caused by defendant's negligence, or a force of nature, occurring after defendant's negligent act or omission and operating as an independent force to produce the injury. It breaks the chain of causation set in operation by defendant's negligence, thereby insulating his negligence as a direct cause of the injury. * * * An intervening cause, to break the causal connection and free the original wrongdoer from liability must be one not produced by his wrongful act or omission, but independent of it, and adequate to effect the injury."

With respect to the "intention test" of proximate cause, the rule is stated (Id. § 7000g):

"An act which in fact produces a result intended by the actor is a

proximate cause of such result. A wrongdoer is liable for all the consequences which he intended to bring about by his wrongful act and which in fact resulted therefrom."

In Mattfeld v. Nester, 226 Minn. 106, 124, 32 N. W. (2d) 291, 304, 3 A. L. R. (2d) 909, 924, this court stated:

"It may be generally stated that an injury is held to be the proximate cause of death where disease intervened, when it is shown that the injury caused the disease from which death resulted; or, if the injury did not cause the disease, that it concurred with the disease as a direct agent in producing death; and without which death would not then have resulted; provided, in either case, there was no intervening act or neglect of the decedent or a third person which contributed to the fatal result."

The testimony of the medical witnesses indicates that, had the beating not occurred, Knopic might well be alive today. Dr. Van De Water testified:

"Cirrhosis of the liver is a progressive condition; one cause of an acute case would be an acute hepatitis, a viral disease, and a severe acute hepatitis caused by a virus can cause a severe injury to the liver which will eventually scar and form what is very similar to Laennec's or portal cirrhosis, I believe; *one with this cirrhosis or a progressive type could live for many, many years. * * * Another thing is also known, that in people exhibiting delirium tremens the addition of another injury their mortality is higher.*" (Italics supplied.)

Dr. John F. Noble stated:

"* * * The diagnosis of delirium tremens clinically was made after consultation with Dr. Van De Water because we felt that this man's injuries were insufficient to have caused his death alone. *After a study of the clinical history of this man and the results of the autopsy, in my opinion the man would have been alive today except for the beating.*" (Italics supplied.)

Dr. Noble added that cirrhosis, which is a progressive disease, may eventually have caused Knopic's death and stated:

"* * * As to whether the injuries listed, together with the chronic alcoholism caused the death of this man, I would be of the opinion that is was possible but not likely. *This opinion is based on the fact that cirrhotics as well as simply alcoholics are very susceptible to injury, and the chronic alcohol[ism] and the presence of the cirrhosis and these injuries might well have caused his death. * * * The amount of cirrhosis was well established, but in my opinion he had enough residual liver, enough liver remaining which was functioning, to have allowed him to live for a considerable time in all probability.*" (Italics supplied.)

In Wharton, Homicide (3 ed.) § 27, the author states:

"* * * one whose wrongful act hastens or accelerates the death of another, or contributes to its cause, is guilty of homicide, though other causes co-operate. And he is guilty if his act was the cause of the cause of death * * *."

See, State v. Schaub, *supra.*

In State v. Francis, 152 S. C. 17, 59, 149 S. E. 348, 363, 70 A. L. R. 1133, 1156, the court held:

"*One who inflicts an injury on another is deemed by the law to be guilty of homicide if the injury contributes mediately or immediately to the death of such other.* The fact that other causes contribute to the death does not relieve the actor of responsibility. So the physical condition of the slain man at the time when the act was done, will not excuse or minimize its consequences, if the causal connection between it and the fact of death is made to appear."

In State v. Rounds, 104 Vt. 442, 453, 160 A. 249, 252, a case somewhat similar factually to this one, the court said:

"The respondent's unlawful acts need not be the sole cause of death; it is sufficient if they were a contributory cause. State v. Block, 87 Conn. 573, 89 Atl. 167, 49 L. R. A. (N. S.) 913. The respondent is responsible for the consequences, even where his acts were not the immediate cause of death, if an intervening cause was the natural result of his wrongful acts. Letner v. State, 156 Tenn. 68, 299 S. W. 1049,

55 A. L. R. 915. The rule is stated in 2 Bishop, Crim. Law, § 637, that 'whenever a blow is inflicted under circumstances to render the person inflicting it criminally responsible if death follows, he will be deemed guilty of the homicide though the person beaten would have died from other causes, or would not have died from this one had not others operated with it; provided the blow contributed either mediately or immediately to the death, in a degree sufficient for the law's notice. In other words, the blow or wound for which the defendant is responsible need not be the sole cause.' Again, in section 639, Mr. Bishop says: 'It (the wound) need not even be a concurrent cause; much less need it be the next proximate one; *for if it is the cause of the cause, no more is required.*' " (Italics supplied.)

It is immaterial that defendant did not know that the deceased was suffering from a condition which facilitated the killing and that he did not reasonably anticipate that his act would cause death. Responsibility attaches for an injury which causes or contributes to death although the condition from which the victim was suffering might itself have caused death in time. State v. Frazier, 339 Mo. 966, 98 S. W. (2d) 707; Griffin v. State, 40 Tex. Cr. 312, 50 S. W. 366; State v. O'Brien, 81 Iowa 88, 46 N. W. 752; People v. Moan, 65 Cal. 532, 4 P. 545; 40 C. J. S., Homicide, § 11d. There can be little, if any, doubt under the facts here and the applicable law that defendant was guilty of an act of homicide and that such was the cause of Knopic's death.

9. Defendant contends, however, that the trial court erred in charging the jury on the issue of proximate cause as follows:

"* * * Likewise, if the said beating, striking and kicking were material elements and substantial factors in the death, then the chain of causation is not broken by reason of the fact that another contributory cause would have been fatal even without the aid of said alleged beating, striking, and kicking."

Counsel for the defense submitted the following requested instruction:

"To sustain a conviction of murder the State must prove beyond a reasonable doubt that the defendant's acts were the proximate cause

of the victim's death. Proximate cause is defined as the direct, immediate, primary, responsible cause. The wrongful act, if any, must have been a substantial factor following in an unbroken sequence causing the death without an intervening efficient cause. An efficient intervening cause is a new and independent force which breaks causal connection between the original wrong and the death."

Defendant contends that the trial court erred in refusing to give the requested instruction. He claims also that the court was required to instruct the jury on proximate cause in language like that approved in Lund v. Minneapolis St. Ry. Co. 250 Minn. 550, 86 N. W. (2d) 78.

We cannot agree with these contentions. The instructions given—although not using the words "proximate cause"—fully presented to the jury the question of causation[2] and the sufficiency of the evidence thereon in language it could readily understand. This court in reviewing those issues has not always spoken in terms of proximate cause. In State v. James, 123 Minn. 487, 144 N. W. 216, this court reviewed a conviction of murder in the second degree. In that case the defendant had inflicted knife wounds on the victim, one penetrating his left lung. Forty-eight hours later he developed pneumonia, from which he died a week later. Although we pointed out the necessity of establishing a causal connection between the injuries and death, we did not use the words "proximate cause." We have used the phrases "causal relation" and "causal connection" many times. See, e. g., Mitton v. Cargill Elev. Co. 124 Minn. 65, 71, 144 N. W. 434, 436.

In State v. Anderson, 261 Minn. 431, 435, 113 N. W. (2d) 4, 7, this court said:

[2]For definitions or explanations of proximate cause and causation, see Dellwo v. Pearson, 259 Minn. 452, 454, 107 N. W. (2d) 859, 861; Slotnick v. Cooley, 166 Tenn. 373, 375, 61 S. W. (2d) 462, 463; Davis v. Atlas Assur. Co. 112 Ohio St. 543, 550, 147 N. E. 913, 915; Pfeifer v. Standard Gateway Theater, Inc. 262 Wis. 229, 234, 55 N. W. (2d) 29, 32; Commonwealth v. Almeida, 362 Pa. 596, 68 A. (2d) 595, 12 A. L. R. (2d) 183; Cornovski v. St. Louis Transit Co. 207 Mo. 263, 275, 106 S. W. 51, 55; 34A Wd. & Phr. (Perm. ed.) p. 620; Prosser, *The Minnesota Court on Proximate Cause*, 21 Minn. L. Rev. 19.

"* * * It is elementary that the court's charge must be read as a whole. All that is said on one issue must be read together and if, when that is done, it correctly states the law on that issue in language that can be understood by the jury there is no reversible error."

In the recent case of State v. Polk, 263 Minn. 209, 212, 116 N. W. (2d) 540, 542, we held that it was not error to refuse to give instructions in the form requested, stating:

"The court is not required to charge in the exact language requested if the instructions as given correctly set forth the applicable law."

Since we find that the instant case was properly submitted to the jury under correct instructions, and no prejudicial error was committed in the rulings on evidence, the record before us brings it within the doctrine of State v. Nelson, 91 Minn. 143, 97 N. W. 652, quoted with approval in State v. Price, 135 Minn. 159, 167, 160 N. W. 677, 680, as follows:

"* * * 'new trials should be granted only where the substantial rights of the accused have been so violated as to make it reasonably clear that a fair trial was not had,' and * * * where, after examination of the record, there is no doubt of the guilt of the accused, 'alleged errors not affecting his substantial or constitutional rights should be brushed aside, and in their place substituted the almighty force and power of truth.' "

Affirmed.

ROGOSHESKE, JUSTICE (concurring specially).

I agree with the result. However, in my opinion it was error for the court to restrict the examination of the prosecuting officers and the attorney appointed to represent McCarty by which defendant undertook to prove his contention that the favorable testimony of the claimed accomplice was induced by a promise of clemency or immunity. Upon a sufficient foundation, the existence, or the probability of the existence, of any such inducement is surely a proper subject of inquiry by the defense. The record does not support excluding this inquiry on the ground of privilege. Here the defense failed to disclose to the court by way of an offer of proof or otherwise that the attempted in-

quiry was founded upon little more than a mere suspicion or possibility. Under the circumstances it would be a recognition of defendant's rights at the expense of fairness to both sides to hold the error prejudicial.

Otis, Justice (concurring specially).

I concur in the opinion of Mr. Justice Rogosheske.