THE PEOPLE OF PUERTO RICO, Plaintiff and Appellee, *v.* HERMINIO GONZÁLEZ RUIZ, Defendant and Appellant.

No. CR-63-198.     Decided June 9, 1964.

566

*Rafael Toro Cubergé* for appellant. *Rodolfo Cruz Contreras, Acting Solicitor General,* and *Héctor R. Orlandi Gómez, Assistant Solicitor General,* for The People.

Division composed of Mr. Justice Pérez Pimentel, as Chief Judge of Division, Mr. Justice Rigau, and Mr. Justice Dávila.

Mr. Justice Dávila delivered the opinion of the Court.

Before the end of the day of July 20, 1962, appellant had a fight with his brother, Eusebio. They had been drinking and an argument broke out. Eusebio attacked appellant with a glass and cut his face. They engaged in a fist fight and Eusebio was wounded on the right side of the chest. The eyewitnesses did not see when the wound was actually inflicted, but when he arrived home shortly thereafter his wife noticed the wound and to her inquiry as to how it had happened, he answered that his brother had wounded him. Sometime after midnight he entered the Ponce District Hospital. It appears from the Hospital record that he had a penetrating wound, described as "incision, made by a sharp weapon." He was operated on and "it was found that he had developed hemothorax which is blood in the right pleural cavity." The condition presented by the blood in the lung was "Secondary to the wound he received." He improved and was dismissed

on August 11, but he continued receiving treatment as an outpatient. It became necessary to operate on him a second time.

The Director of the Hospital testified that then "the Thoracic Surgeon of the Hospital, Dr. Costas Dureaux, was called in consultation. When Dr. Costas arrived the patient had dyspnea and hemoptysis; he was bleeding and after observing him the doctor decided that decortication was necessary. This means that when there is a large amount of blood in the pleural cavity, that blood coagulates all over the lung; then, . . . a bag-like deposit is formed that prevents the lung from expanding and doing its work. The operation was performed to remove the fibrinous layer that had been formed and enveloped the lung in order to let the latter expand. Such is the operation that must be, and actually was, performed."

The second time, the patient entered the Hospital September 7 and the operation was performed October 8. "Two or three days after the operation, the patient . . . was in shock, perspiring, cold, had dyspnea and there had been a substantial increase in the blood flowing through the drainage system devised after the operation. He was given blood; the patient improved . . . ." But on October 16 he died of pulmonary embolism. The physician testified that "the fact that he received the wound was contributory in developing the thrombosis."

Appellant was accused and convicted of voluntary manslaughter. He alleges on appeal that the evidence is not sufficient "inasmuch as there is no evidence pointing him out as the person who attacked and wounded [the] decedent." He also contends that the court erred (1) in allowing the victim's wife to testify regarding certain statements made by the victim to her immediately upon arriving home shortly after the fight with appellant and (2) in finding him guilty of

manslaughter while from the autopsy it appears that the cause of death was an embolism.

■ The evidence is sufficient. There is direct evidence that defendant had a discussion with his brother, that they grappled and that "they engaged in a clinch." Those watching the fight separated them. The victim went home and his wife testified that when she welcomed him "I saw he had been stabbed in the chest and had a bruise on the chin." She described the wound as "deep." This evidence is sufficient to establish appellant's responsibility for the wound inflicted on his brother. Moreover, the victim's wife testified that she asked him "who had hit him and he said it had been Herminio; his brother Herminio had hit him, when Mr. Pedro Galarzo was holding him."[1]

■ Appellant challenges this portion of the wife's testimony but ". . . this manifestation was so close to the main happening both in time and distance . . .", *People* v. *Quirós*, 48 P.R.R. 939, 942 (1935); *People* v. *Calventy*, 34 P.R.R. 375, 377 (1925) that it was evidently admissible.

We shall now consider whether the fact that the immediate cause of death had been a pulmonary embolism, clears defendant-appellant from responsibility.

We have held in previous occasions "that when death follows the injury without other independent intervening cause calculted to produce death, had decedent not been injured by defendant's wrongful act, all evidence tending to show lack of adequate treatment should be excluded," *People* v. *Tilo, alias Franmachú,* 67 P.R.R. 463, 466 (1947) making defendant liable for the ensuing death. This case presents a theme variation demanding further consideration of the issue. Here, on account of the wound inflicted, it became necessary to perform an operation and the cause of death was a pulmo-

---

[1] From the testimony of the witness it is clear that when she used the word "hit", she meant "wounded."

nary embolism. The autopsy certificate reads that "The cause of death in this case had no direct relation to the wound suffered by the decedent sometime on July 20 or 21. We deem, however, that it has an indirect relation, since as a result of the wound suffered at that time the decedent had to undergo surgery, and to be bedridden, which facts are considered . . . as conducive to thrombosis in the veins of the lower limbs as well as intrapelvic. These vein thromboses may subsequently produce pulmonary embolisms that may cause the death of the patients, as happened in the case with which we are concerned."

■ ■ It is generally accepted that if a wound is wrongfully inflicted and on account thereof an operation must be performed and complications arise as a result of which the patient dies, the person who inflicted the wound is liable for the death. The wound is considered as the mediate cause, the complication, as the direct cause. As stated by Wharton: "The rule is founded upon the general principle that every person is to be held to contemplate, and to be responsible for, the natural consequences of his own acts." 1 Wharton, Criminal Law and Procedure, § 201 (1957, 12th ed.).

In *State* v. *Rounds*, 160 Atl. 249, 252 (Vt. 1932) the doctrine is set forth in the following terms:

"The respondent's unlawful acts need not be the sole cause of death; it is sufficient if they were a contributory cause. *State* v. *Block*, 87 Conn. 573, 89 A. 167, 49 L.R.A. (N.S.) 913. The respondent is responsible for the consequences, even where his acts were not the immediate cause of death, if an intervening cause was the natural result of his wrongful acts. *Letner* v. *State*, 156 Tenn. 68, 299 S.W. 1049, 55 A.L.R. 915. The rule is stated in 2 Bishop, Crim. Law, § 637, that, 'whenever a blow is inflicted under circumstances to render the person inflicting it criminally responsible if death follows, he will be deemed guilty of the homicide though the person beaten would have died from other causes, or would not have died from this one had not others operated with it; provided the blow contributed either

mediately-or immediately to the death, in a degree sufficient for the law's notice. In other words, the blow or wound for which the defendant is responsible need not be the sole cause.' Again, in section 639, Mr. Bishop says: 'It (the wound) need not even be a concurrent cause; much less need it be the next proximate one; for if it is the cause of the cause, no more is required.' "

See, also: *De Vaughn v. State*, 194 A.2d 109 (Md. 1963); *State v. Smith*, 119 N.W.2d 838 (Minn. 1962); *United States v. Hamilton*, 182 F.Supp. 548 (D.C.D.C. 1960); *Hall v. State*, 159 N.E. 420 (Ind. 1928); *People v. Kane*, 107 N.E. 655 (N.Y. 1915); 2 Burdick, Law of Crime, § 421 (1946); Wharton, *op. cit.*, §§ 201–202, 9 Halsbury, The Laws of England, § 735 (1933); Comment, 31 Mich. L. Rev. 659 (1933); Fotch, *Proximate Cause in the Law of Homicide*, 12 So. Cal. L. Rev. 17 (1938); Note, 22 Modern. L. Rev. 514, 517 (1959); Annotation, 126 A.L.R. 912, 916 (1940); *cf. Merced v. Government of the Capital*, 85 P.R.R. 530 (1962).

■ In the instant case, although the immediate cause of death was the embolism, the mediate cause, the cause that set in motion the chain of events that culminated in the victim's death, was the wound inflicted by appellant. The law makes him liable for that death.

The judgment appealed from shall be affirmed.